# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK
### BUFFALO DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA, STATE OF CALIFORNIA, STATE OF COLORADO, STATE OF CONNECTICUT, STATE OF DELAWARE, DISTRICT OF COLUMBIA, STATE OF FLORIDA, STATE OF GEORGIA, STATE OF HAWAII, STATE OF ILLINOIS, STATE OF INDIANA, STATE OF IOWA, STATE OF LOUISIANA, STATE OF MARYLAND, COMMONWEALTH OF MASSACHUSETTS, STATE OF MICHIGAN, STATE OF MINNESOTA, STATE OF MONTANA, STATE OF NEVADA, STATE OF NEW HAMPSHIRE, STATE OF NEW JERSEY, STATE OF NEW MEXICO, STATE OF NEW YORK, STATE OF NORTH CAROLINA, STATE OF OKLAHOMA, STATE OF RHODE ISLAND, STATE OF TENNESSEE, STATE OF TEXAS, COMMONWEALTH OF VIRGINIA, and the STATE OF WISCONSIN, *EX REL.* [UNDER SEAL], | **FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)** <br><br> CIVIL NO.: <br><br> **COMPLAINT** |
| Plaintiffs, |  |
| vs. |  |
| [UNDER SEAL], |  |
| Defendant. |  |

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
BUFFALO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, STATE OF CALIFORNIA, STATE OF COLORADO, STATE OF CONNECTICUT, STATE OF DELAWARE, DISTRICT OF COLUMBIA, STATE OF FLORIDA, STATE OF GEORGIA, STATE OF HAWAII, STATE OF ILLINOIS, STATE OF INDIANA, STATE OF IOWA, STATE OF LOUISIANA, STATE OF MARYLAND, COMMONWEALTH OF MASSACHUSETTS, STATE OF MICHIGAN, STATE OF MINNESOTA, STATE OF MONTANA, STATE OF NEVADA, STATE OF NEW HAMPSHIRE, STATE OF NEW JERSEY, STATE OF NEW MEXICO, STATE OF NEW YORK, STATE OF NORTH CAROLINA, STATE OF OKLAHOMA, STATE OF RHODE ISLAND, STATE OF TENNESSEE, STATE OF TEXAS, COMMONWEALTH OF VIRGINIA, and the STATE OF WISCONSIN, *EX REL.* CRISTINA FRAZIER, <br><br> Plaintiffs, <br><br> vs. <br><br> ALLERGAN, INC., <br><br> Defendant. | **FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)** <br><br> CIVIL NO.: <br><br> **COMPLAINT** |

Plaintiff and relator CRISTINA FRAZIER ("Relator"), by and through her attorneys, states that this is an action brought by Relator against defendant ALLERGAN, INC. ("Allergan" or "Defendant"), on behalf of the United States of America ("United States"), pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3729 *et seq.* (the "FCA"), and on behalf of the State of California, State of Colorado, State of Connecticut, State of Delaware, District of Columbia, State of Florida, State of Georgia, State of Hawaii, State of Illinois, State of Indiana,

1

State of Iowa, State of Louisiana, State of Maryland, Commonwealth of Massachusetts, State of Michigan, State of Minnesota, State of Montana, State of Nevada, State of New Hampshire, State of New Jersey, State of New Mexico, State of New York, State of North Carolina, State of Oklahoma, State of Rhode Island, State of Tennessee, State of Texas, Commonwealth of Virginia, and State of Wisconsin (collectively, the "State Plaintiffs"), pursuant to the California False Claims Act, Cal. Gov. Code § 12650 *et seq.*; Colorado Medicaid False Claims Act, Co. Rev. Stat. § 25.5-4-303.5 *et seq.*; Connecticut False Claims Act, Conn. Gen. Stat. § 17b-301a *et seq.*; Delaware False Claim and Reporting Act, 6 Del. C. § 1201 *et seq.*; District of Columbia Procurement Reform Act, D.C. Code § 2-381.01 *et seq.*; Florida False Claims Act, Fla. Stat. Ann. § 68.081 *et seq.*; Georgia False Medicaid Claims Act, Ga. Code Ann. § 49-4-168 *et seq.*; Hawaii False Claims Act, Haw. Rev. Stat. § 661-21 *et seq.*; Illinois Whistleblower Reward and Protection Act, 740 Ill. Comp. Stat. § 175/1 *et seq.*; Indiana False Claims and Whistleblower Protection Act, Ind. Code § 5-11-5.5 *et seq.*; Iowa Medicaid False Claims Act, Iowa Code Ann. § 685.1 *et seq.*; Louisiana Medical Assistance Programs Integrity Law, La. Rev. Stat. Ann. § 46:437.1 *et seq.*; Maryland False Health Claims Act, Md. Code Ann. Health-Gen. § 2-601 *et seq.*; Massachusetts False Claims Act, Mass. Gen. Laws ch. 12, § 5 *et seq.*; Michigan Medicaid False Claims Act, Mich. Comp. Laws § 400.601 *et seq.*; Minnesota False Claims Act, Minn. Stat. § 15C.01 *et seq.*; Montana False Claims Act, Mont. Code Ann. § 17-8-403 *et seq.*; Nevada False Claims Act, Nev. Rev. Stat. Ann. §357.010 *et seq.*; New Hampshire False Claims Act, N.H. Rev. Stat. Ann. § 167:61-b *et seq.*; New Jersey False Claims Act, N.J.S.A. 2A:32C-1 *et seq.*; New Mexico Medicaid False Claims Act, N.M. Stat. Ann. § 27-14-1 *et seq.*; New York False Claims Act, N.Y. State Fin. § 187 *et seq.*; North Carolina False Claims Act, N.C. Gen. Stat. § 1-605 *et seq.*; Oklahoma Medicaid False Claims Act, 63 Okla. Stat. Ann. § 5053 *et seq.*;

Rhode Island False Claims Act, R.I. Gen. Laws § 9-1.1-1 *et seq.*; Tennessee Medicaid False Claims Act, Tenn. Code Ann. § 71-5-181 *et seq.*; Texas Medicaid Fraud Prevention Act, Tex. Hum. Res. Code Ann. § 36.001 *et seq.*; Virginia Fraud Against Taxpayers Act, Va. Code Ann. § 8.01-216.1 *et seq.*; and the Wisconsin False Claims for Medical Assistance Law, Wis. Stat. § 20.931 *et seq.* (collectively, the "State Acts"), respectively.

## **INTRODUCTION**

1.      This is an action to recover treble damages and civil penalties on behalf of the United States and the State Plaintiffs (collectively, the "Government") arising from false or fraudulent claims and/or false statements or records ("False Claims") made, used, presented, or caused to be made, used or presented, by Defendant to the Government in violation of the FCA and the relevant State Acts.

2.      The False Claims at issue were made in order to defraud Government-funded health benefit programs, including, but not limited to, Medicare, Medicaid, the Federal Employees Health Benefits Program ("FEHBP") and TRICARE/CHAMPUS (collectively, "Government Health Programs"), of millions of dollars in monies intended to pay for prescription drugs.

## **SUMMARY OF ALLEGATIONS**

3.      In May 2010, Defendant launched an illegal marketing and kickback scheme designed to increase market share for its overactive bladder medication Sanctura XR ("SXR").

4.      As part of this scheme, Defendant distributed thousands of "Pay No More Than" ("PNMT") discount cards, promising to cap the cost of patients' prescriptions for SXR at $30 per month (or one dollar per day), *regardless of the patients' insurance status*.

5.      As set forth in greater detail below, Defendant's ongoing scheme violates

numerous state and federal laws, including, but not limited to, 42 U.S.C. § 1320a-7b(b) (the "Anti-Kickback Statute") and 42 U.S.C. § 1396r-8 (the "Medicaid Rebate Statute").

6.      Defendant has violated the Anti-Kickback Statute by, among other things, (i) offering or paying valuable remuneration to pharmacists with the purpose of increasing prescriptions for SXR, and (ii) offering or paying valuable remuneration to and/or offering and accepting discounted co-pays from beneficiaries of Medicare Part D with knowledge that such remuneration and/or such discounts would be likely to influence the beneficiary's selection of SXR over other alternatives.

7.      Defendant has violated the Medicaid Rebate Statute by failing to accurately report "best price" information for SXR to the Centers for Medicare & Medicaid Services ("CMS"), thereby causing an underpayment in rebate amounts by Defendant to the State Plaintiffs and falsely inflated submissions by the States Plaintiffs to the federal government for reimbursement of Medicaid expenditures.

8.      In addition, Defendant has exploited the Medicare Part D "donut hole" by encouraging and enabling pharmacists to classify sales of SXR to Medicare and Medicaid patients as "cash" transactions.

9.      As a result of Defendant's conduct, Defendant has caused the Government to incur millions of dollars in damages between May 2010 and the present.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, 31 U.S.C. § 3730, and 31 U.S.C. § 3732, which specifically confers jurisdiction on this Court for actions brought pursuant to the FCA.

11.     This Court has personal jurisdiction over Defendant pursuant to 31 U.S.C. §

4

3732(a) because that section authorizes nationwide service of process and Defendant has sufficient minimum contacts with the United States.

12.     Venue is proper in the Western District of New York pursuant to 31 U.S.C. § 3732(a) because Defendant transacts business within that district and Defendant has engaged in certain acts proscribed by 31 U.S.C. § 3729 within that district.

13.     In accordance with 31 U.S.C. § 3730(b)(2), this Complaint has been filed *in camera*, shall remain under seal for a period of at least sixty (60) days, and shall not be served upon the Defendant until the Court so orders.

14.     In accordance with 31 U.S.C. § 3730(b)(2), Relator provided the Government with a copy of this Complaint and a written disclosure of substantially all material evidence and information in his possession either before or contemporaneously with the filing of this Complaint.  More specifically, Relator complied with this provision by serving copies of this Complaint and such written disclosure upon Robert G. Trusiak, Assistant United States Attorney for the Western District of New York, and Eric H. Holder, Jr., United States Attorney General.

## THE PARTIES

### A.  The Relator

15.     Relator is a citizen and resident of the State of Louisiana with extensive experience in the pharmaceutical sales industry.

16.     From March 2002 until June 2005, Relator worked as a specialty sales representative for Boehringer Ingelheim Pharmaceuticals, Inc.

17.     From July 2006 until October 2007, Relator worked as urology / gynecology sales representative for Esprit Pharma, Inc. ("Esprit").

18.     After Esprit was acquired by Defendant in September 2007, Relator became a

sales representative / territory manager for Defendant.

19.    Relator worked as a sales representative / territory manager for Defendant from October 2007 until May 2011.

20.    In her capacity as a sales representative / territory manager for Defendant, Relator was responsible for the marketing and sale of SXR within her sales territory in Louisiana.

21.    As a result of her professional experience working for Defendant, Relator gained extensive knowledge of Defendant's practices and the violations alleged herein.

22.    Most importantly, Relator learned the specifics of the PNMT discount card program, which served as the basis of Defendant's unlawful marketing and kickback scheme.

23.    Relator brings this action for violations of the FCA on behalf of herself and the United States pursuant to 31 U.S.C. § 3730(b)(1).

24.    Relator also brings this action for violations of the State Acts on behalf of the various State Plaintiffs.

25.    Relator is not aware of any "public disclosure" in connection with the False Claims alleged in this Complaint.  In any event, Relator is an "original source" under the FCA and has knowledge which is both direct and independent of any public disclosures (to the extent that any such disclosures exist).

26.    Relator's personal knowledge of the violations alleged in this Complaint was acquired during the course of her employment for Defendant.

**B.  <u>The Defendant</u>**

27.    Defendant is a Delaware corporation having its principal executive offices located at 2525 Dupont Drive, Irvine, California 92612.

28.     Defendant was founded in 1950, incorporated in 1977, and is now publicly listed on the New York Stock Exchange (NYSE: AGN).

29.     As of December 31, 2011, Defendant employed approximately 3,400 sales representatives throughout around the world.

30.     For the fiscal year ended December 31, 2011, Defendant reported approximately $5.42 billion in total revenues.

## GENERAL ALLEGATIONS

### A.  The Federal False Claims Act

31.     Originally enacted in 1863, the FCA was substantially amended in 1986 by the False Claims Amendments Act to facilitate enforcement and recovery by the United States and to encourage private enforcement by *qui tam* plaintiffs (often referred to as "relators").  Under the version of the FCA adopted by the False Claims Amendments Act, liability is imposed on any person who:

    a.  knowingly presents, or causes to be presented, to an officer or employee of the United States Government a false or fraudulent claim for payment or approval;

    b.  knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;

    c.  conspires to defraud the Government by getting a false or fraudulent claim allowed or paid; or

    d.  knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government.

*See* 31 U.S.C. § 3729(a)(1), (2), (3) and (7).

32.     On May 20, 2009, the FCA was again amended pursuant to the Fraud Enforcement and Recovery Act of 2009 ("FERA").  A person is liable for violation of the FCA,

as amended by FERA, if the person:

    a. knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

    b. knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

    c. conspires to commit a violation of 31 U.S.C. § 3729(a)(1); or

    d. knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government.

*See* 31 U.S.C. § 3729(a)(1)(A), (B), (C) and (G).

33.    For purposes of the FCA, as amended by FERA, "knowing" or "knowingly" means that the defendant "(i) has actual knowledge of the falsity of the [relevant] information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A). No proof of specific intent to defraud is required. *Id.*

34.    The word "material" is defined under the FCA, as amended by FERA, as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4).

35.    The FCA, as amended by FERA, further provides that liability under the act shall include "a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 . . . [for each unlawful act], plus 3 times the amount of the damages which the Government sustains because of the act . . . ." *See* 31 U.S.C. § 3729(a)(1).

**B.  Government Health Programs**

36.     Medicare is a federal government-funded health program primarily benefiting the elderly, which was created in 1965 with the adoption of Title XVIII of the Social Security Act. It is administered by the federal Health Care Financing Administration ("HCFA"), now known as CMS.  Medicare Part D generally covers prescription drugs.

37.     Medicaid is a joint federal-state health benefits program generally available to low-income adults and their children, as well as individuals with certain disabilities.  While Medicaid is administered by the States (or State subcontractors), it is funded by both the States themselves and the federal government.  In general, Medicaid's coverage for prescription drugs is significantly more expansive than that provided by Medicare.  Although payment for prescription drugs is an optional service that States may choose to include in or exclude from the Medicaid programs, virtually every State has included basic prescription drug coverage in its Medicaid plan.

38.     Federal law prescribes that drug manufacturers must pay rebates to the States to ensure the Medicaid Rebate Program is paying the lowest price the manufacturer sells a covered drug to any purchasers in the United States, inclusive of cash discounts, free goods, kickbacks, volume discounts and rebates.  The "best price" provisions are intended to ensure that the Government is being provided the lowest price on drugs.

39.     The FEHBP is a collection of individual health care plans, including the Blue Cross and Blue Shield Association, Government Employees Hospital Association and Rural Carrier Benefit Plan, which provide health insurance coverage for federal employees, retirees and their dependents.  FEHBP plans are managed by the Office of Personnel Management and collectively pay more than $2 billion annually in prescription drug benefits.

40.     TRICARE is the United States military's health care system, designed to maintain the health of service personnel, provide health care during military operations, and offer health care to non-active duty beneficiaries, including dependents of active duty personnel, military retirees and their dependents.  The system operates through various military-operated hospitals and clinics worldwide and is supplemented through contracts with civilian health care providers. Military prescription drug benefits are provided through three programs: military treatment facility outpatient pharmacies; TRICARE contractor retail pharmacies; and a national contractor's mail-order service.

41.     CHAMPUS, or the Civilian Health and Medical Program of the Uniformed Services, provides reimbursements to military families who must obtain care from civilian medical providers when care at a military hospital or clinic is not available.

### C.  **The State Acts**

42.     Like the FCA, the State Acts are generally designed to allow states to recover damages sustained as a result of False Claims made, used, presented, or caused to be made, used or presented, by a defendant.

43.     The State Acts are implicated when False Claims are made, used, presented, or caused to be made, used or presented, to Government Health Programs funded in whole or in part by the States, including, but not limited to, Medicaid.

*The California False Claims Act,*
*Cal. Gov. Code § 12650 et seq. ("CA FCA")*

44.      Among other things, the CA FCA provides that any person who knowingly presents or causes to be presented false or fraudulent claims, for payment or approval to the State of California is liable for a civil penalty ranging from $5,000 up to $10,000 for each violation of

the Act, plus up to three times the amount of damages sustained by the State of California.

45.     Under the CA FCA, "knowing" and "knowingly" means that the defendant had actual knowledge of the information, acted in deliberate ignorance of the truth or falsity of the information or acted in reckless disregard of the truth or falsity of the information.  Knowledge by the defendant is established without regard as to whether the defendant intended to defraud the state.

46.     The CA FCA further provides for liability for those who conspire to commit a violation of the Act.

**The Colorado Medicaid False Claims Act,**
**Co. Rev. Stat. § 25.5-4-303.5 et seq. ("CO MFCA")**

47.     Among other things, the CO MFCA provides that any person who knowingly presents or causes to be presented false or fraudulent claims, for payment or approval to an officer or employee of the State of Colorado is liable for a civil penalty ranging from $5,000 up to $10,000 for each violation of the Act, plus up to three times the amount of damages sustained by the State of Colorado.

48.     Under the CO MFCA, "knowing" and "knowingly" means that the defendant had actual knowledge of the information, acted in deliberate ignorance of the truth or falsity of the information or acted in reckless disregard of the truth or falsity of the information.  Knowledge by the defendant is established without regard as to whether the defendant intended to defraud the state.

49.     The CO MFCA further provides for liability for those who conspire to commit a violation of the Act.

**The Connecticut False Claims Act,**
**Conn. Gen. Stat. § 17b-301a et seq. ("CT FCA")**

50.     Among other things, the CT FCA provides that any person who knowingly presents or causes to be presented false or fraudulent claims for payment or approval under a medical assistance program administered by the State's Department of Social Services is liable for a civil penalty ranging from $5,500 up to $11,000 for each violation of the Act, plus up to three times the amount of damages sustained by the State of Connecticut, plus the costs of investigation and prosecution of the violation.

51.     Under the CT FCA, "knowing" and "knowingly" means that the defendant had actual knowledge of the information, acted in deliberate ignorance of the truth or falsity of the information or acted in reckless disregard of the truth or falsity of the information.  Knowledge by the defendant is established without regard as to whether the defendant intended to defraud the state.

52.     The CT FCA further provides for liability for those who conspire to commit a violation of the Act.

**The Delaware False Claim and Reporting Act,**
**6 Del. C. § 1201 et seq. ("DE FCA")**

53.     Among other things, the DE FCA provides that any person who knowingly presents or causes to be presented false or fraudulent claims, for payment or approval to an officer or employee of the State of Delaware is liable for a civil penalty ranging from $5,500 up to $11,000 for each violation of the Act, plus up to three times the amount of damages sustained by the State of Delaware.

54.     Under the DE FCA, "knowing" and "knowingly" means that the defendant had actual knowledge of the information, acted in deliberate ignorance of the truth or falsity of the

information or acted in reckless disregard of the truth or falsity of the information.  Knowledge by the defendant is established without regard as to whether the defendant intended to defraud the state.

55.     The DE FCA further provides for liability for those who conspire to defraud the State of Delaware by getting a false or fraudulent claim allowed or paid.

**The District of Columbia Procurement Reform Act,**
**D.C. Code § 2-381.01 et seq. ("DC FCA")**

56.     Among other things, the DC FCA provides that any person who knowingly presents or causes to be presented false or fraudulent claims for payment or approval to an officer or employee of the District of Columbia is liable for three times the amount of damages sustained by the District of Columbia, plus the costs of a civil action brought to recover penalties or damages, and may also be liable for a civil penalty ranging from $5,000 up to $10,000 for each false claim.

57.     Under the DC FCA, "knowing" and "knowingly" means that the defendant had actual knowledge of the information, acted in deliberate ignorance of the truth or falsity of the information or acted in reckless disregard of the truth or falsity of the information.  Proof of specific intent to defraud is not required for an act to be "knowing" or "knowingly".

58.     The DC FCA further provides for liability for those who conspire to defraud the District of Columbia by getting a false or fraudulent claim allowed or paid.

**The Florida False Claims Act,**
**Fla. Stat. Ann. § 68.081 et seq. ("FL FCA")**

59.     Among other things, the FL FCA provides that any person who knowingly presents or causes to be presented false or fraudulent claims, for payment or approval to an officer or employee of the State of Florida is liable for a civil penalty ranging from $5,500 up to

$11,000 for each violation of the Act, plus up to three times the amount of damages sustained by the State of Florida.

60.    Under the FL FCA, "knowing" and "knowingly" means that the defendant had actual knowledge of the information, acted in deliberate ignorance of the truth or falsity of the information or acted in reckless disregard of the truth or falsity of the information.  Knowledge by the defendant is established without regard as to whether the defendant intended to defraud the state.

61.    The FL FCA further provides for liability for those who conspire to commit a violation of the Act.

**The Georgia False Medicaid Claims Act,**
**Ga. Code Ann. § 49-4-168 et seq. ("GA FMCA")**

62.    Among other things, the GA FMCA provides that any person who knowingly presents or causes to be presented false or fraudulent claims, for payment or approval to the Georgia Medicaid program is liable for a civil penalty ranging from $5,500 up to $11,000 for false or fraudulent claim, plus up to three times the amount of damages sustained by the Georgia Medicaid program.

63.    Under the GA FMCA, "knowing" and "knowingly" means that the defendant had actual knowledge of the information, acted in deliberate ignorance of the truth or falsity of the information or acted in reckless disregard of the truth or falsity of the information.  Knowledge by the defendant is established without regard as to whether the defendant intended to defraud the state.

64.    The GA FMCA further provides for liability for those who conspire to defraud the Georgia Medicaid program by getting a false or fraudulent claim allowed or paid.

*Hawaii False Claims Act,*
*Haw. Rev. Stat. § 661-21 et seq. ("HI FCA")*

65.     Among other things, the HI FCA provides that any person who knowingly presents, or causes to be presented, false or fraudulent claims for payment or approval to an officer or employee of the State of Hawaii is liable for a civil penalty ranging from $5,000 up to $10,000 for each claim, plus up to three times the amount of damages sustained by the State of Hawaii.

66.     Under the HI FCA, "knowing" and "knowingly" means that the defendant had actual knowledge of the information, acted in deliberate ignorance of the truth or falsity of the information or acted in reckless disregard of the truth or falsity of the information.  No proof of specific intent to defraud is required.

67.     The HI FCA further provides for liability for those who conspire to defraud the State of Hawaii by getting a false or fraudulent claim allowed or paid.

*The Illinois Whistleblower Reward and Protection Act,*
*740 Ill. Comp. Stat. § 175/1 et seq. ("IL FCA")*

68.     Among other things, the IL FCA provides that any person who knowingly presents, or causes to be presented, false or fraudulent claims, for payment or approval to the State of Illinois is liable for a civil penalty ranging from $5,500 up to $11,000 for each claim, plus up to three times the amount of damages sustained by the State of Illinois.

69.     Under the IL FCA, "knowing" and "knowingly" means that the defendant had actual knowledge of the information, acted in deliberate ignorance of the truth or falsity of the information or acted in reckless disregard of the truth or falsity of the information.  Knowledge by the defendant is established without regard as to whether the defendant intended to defraud the state.

70.     The IL FCA further provides for liability for those who conspire to defraud the State of Illinois by getting a false or fraudulent claim allowed or paid.

**The Indiana False Claims and Whistleblower Protection Act,**
**Ind. Code § 5-11-5.5 et seq. ("IN FCA")**

71.     Among other things, the IN FCA provides that any person who knowingly presents a false claim for payment or approval to the State of Indiana is liable for a civil penalty of at least $5,000 for each violation of the Act, plus up to three times the amount of damages sustained by the State of Indiana.

72.     Under the IN FCA, "knowing" and "knowingly" means that the defendant had actual knowledge of the information, acted in deliberate ignorance of the truth or falsity of the information or acted in reckless disregard of the truth or falsity of the information.

73.     The IN FCA further provides for liability for those who conspire to commit a violation of the Act or induces another to perform an act in violation of the Act.

**The Iowa Medicaid False Claims Act,**
**Iowa Code Ann. § 685.1 et seq. ("IA MFCA")**

74.     Among other things, the IA MFCA provides that any person who knowingly presents or causes to be presented false or fraudulent claims for payment or approval is liable for a civil penalty of not less than and not more than the civil penalty allowed under the federal FCA for each false or fraudulent claim, plus three times the amount of damages sustained by the State of Iowa as a result of the false or fraudulent claims.

75.     Under the IA MFCA, "knowing" and "knowingly" means that the defendant had actual knowledge of the information, acted in deliberate ignorance of the truth or falsity of the information or acted in reckless disregard of the truth or falsity of the information.  "Knowing" or "knowingly" does not require proof of specific intent to defraud.

76.     The IA MFCA further provides for liability for those who conspire to commit a violation of the Act.

**The Louisiana Medical Assistance Programs Integrity Law,**
**La. Rev. Stat. Ann. § 46:437.1 et seq. ("LA MFCA")**

77.     Among other things, the LA MFCA provides that any person who knowingly presents or causes to be presented false or fraudulent claims for payment or approval is liable for a civil penalty of not less than $5,500 and not more than $11,000 for each false or fraudulent claim, plus a civil fine not to exceed three times the amount of damages sustained by the State's medical assistance programs as a result of the false or fraudulent claims.

78.     Under the LA MFCA, "knowing" and "knowingly" means that the defendant had actual knowledge of the information or acted in deliberate ignorance or reckless disregard of the truth or falsity of the information.

79.     The LA MFCA further provides for liability for those who conspire to defraud, or attempt to defraud, the State's medical assistance programs by obtaining, or attempting to obtain, payment for a false or fraudulent claim.

**The Maryland False Health Claims Act,**
**Md. Code Ann. Health-Gen. § 2-601 et seq. ("MD FHCA")**

80.     Among other things, the MD FHCA provides that any person who knowingly presents, or causes to be presented, false or fraudulent claims, for payment or approval to the State of Maryland is liable for a civil penalty not to exceed $10,000 for each violation of the Act, plus up to three times the amount of damages sustained by the State of Maryland.

81.     Under the MD FHCA, "knowing" and "knowingly" means that the defendant had actual knowledge of the information, acted in deliberate ignorance of the truth or falsity of the information or acted in reckless disregard of the truth or falsity of the information.  Knowledge

by the defendant is established without regard as to whether the defendant intended to defraud the state.

82.     The MD FHCA further provides for liability for those who conspire to commit a violation of the Act.

**The Massachusetts False Claims Act,**
**Mass. Gen. Laws ch. 12, § 5 et seq. ("MA FCA")**

83.     Among other things, the MA FCA provides that any person who knowingly presents or causes to be presented false or fraudulent claims for payment or approval is liable for a civil penalty of not less than $5,000 and not more than $10,000 per violation, plus three times the amount of damages, including consequential damages, sustained by the commonwealth or political subdivision as a result of the violation.

84.     Under the MA FCA, "knowing" and "knowingly" means that the defendant had actual knowledge of the information, acted in deliberate ignorance of the truth or falsity of the information or acted in reckless disregard of the truth or falsity of the information.  No proof of specific intent to defraud is required.

85.     The MA FCA further provides for liability for those who conspire to defraud the commonwealth or any political subdivision thereof through the allowance or payment of a fraudulent claim.

**The Michigan Medicaid False Claims Act,**
**Mich. Comp. Laws § 400.601 et seq. ("MI MFCA")**

86.     Among other things, the MI MFCA provides that any person who knowingly makes or presents, or causes to be made or presented, a false under the Medicaid program is guilty of a felony, punishable by imprisonment of not more than 4 years or a fine of not more than $50,000, or both.

87.     Under the MI MFCA, "knowing" and "knowingly" means that the person was in possession of facts under which he or she is aware or should be aware of the nature of his or her conduct and that his or her conduct is substantially certain to cause the payment of a Medicaid benefit.  No proof of specific intent to defraud is required.

88.     The MI MFCA further provides for liability for those who conspire to defraud the State of Michigan by obtaining or aiding another to obtain the payment or allowance of a false claim under Medicaid.

**The Minnesota False Claims Act,**
**Minn. Stat. § 15C.01 et seq. ("MN FCA")**

89.     Among other things, the MN FCA provides that any person who knowingly presents or causes to be presented false or fraudulent claims for payment or approval is liable for a civil penalty of not less than $5,500 and not more than $11,000 per false or fraudulent claim, plus three times the amount of damages sustained by the State of Minnesota or political subdivision thereof as a result of the violation.

90.     Under the MN FCA, "knowing" and "knowingly" means that the defendant had actual knowledge of the information, acted in deliberate ignorance of the truth or falsity of the information or acted in reckless disregard of the truth or falsity of the information.  No proof of specific intent to defraud is required.

91.     The MN FCA further provides for liability for those who conspire to present a false or fraudulent claim to the State of Minnesota or political subdivision thereof.

**Montana False Claims Act,**
**Mont. Code Ann. § 17-8-403 et seq. ("MT FCA")**

92.     Among other things, the MT FCA provides that any person who knowingly presents or causes to be presented to an officer of employee of the State of Montana a false claim

for payment or approval, and thereby causes damage in excess of $500 to the State of Montana, is liable for a civil penalty of up to $10,000 per false claim, plus not less than two times and not more than three times the amount of damages sustained by the State of Montana as a result of the violation.

93.     Under the MT FCA, "knowing" and "knowingly" means that the defendant had actual knowledge of the information, acted in deliberate ignorance of the truth or falsity of the information or acted in reckless disregard of the truth or falsity of the information.

94.     The MT FCA further provides for liability for those who conspire to defraud the State of Montana by getting a false claim allowed or paid.

**Nevada False Claims Act,**
**Nev. Rev. Stat. Ann. § 357.010 et seq. ("NV FCA")**

95.      Among other things, the NV FCA provides that any person who knowingly presents or causes to be a false claim for payment or approval is liable for a civil penalty of not less than $5,000 and not more than $10,000 per false claim, plus three times the amount of damages sustained by the State of Nevada or political subdivision thereof as a result of the violation.

96.     Under the NV FCA, "knowing" and "knowingly" means that the defendant had actual knowledge of the information, acted in deliberate ignorance of the truth or falsity of the information or acted in reckless disregard of the truth or falsity of the information.  No proof of specific intent to defraud is required.

97.     The NV FCA further provides for liability for those who conspire to defraud the State of Nevada by obtaining allowance or payment of a false claim.

***The New Hampshire False Claims Act,***
***N.H. Rev. Stat. Ann. § 167:61-b et seq. ("NH FCA")***

98.     Among other things, the NH FCA provides that any person who knowingly presents or causes to be presented false or fraudulent claims for payment or approval to an officer or employee of the New Hampshire Department of Health and Human Services is liable for a civil penalty of not less than $5,000 and not more than $10,000, plus three times the amount of damages sustained by the State of New Hampshire as a result of the violation.

99.     Under the NH FCA, "knowing" and "knowingly" means that the defendant had actual knowledge of the information, acted in deliberate ignorance of the truth or falsity of the information or acted in reckless disregard of the truth or falsity of the information.  No proof of specific intent to defraud is required for an act to be knowing.

100.     The NH FCA further provides for liability for those conspire to defraud the New Hampshire Department of Health and Human Services by getting a false or fraudulent claim allowed or paid.

***The New Jersey False Claims Act,***
***N.J.S.A. 2A:32C-1 et seq. ("NJ FCA")***

101.     Among other things, the NJ FCA provides that any person who knowingly presents or causes to be presented false or fraudulent claims, for payment or approval to an employee, officer or agent of the State of New Jersey is liable for a civil penalty ranging from $5,500 up to $11,000 for each false claim, plus up to three times the amount of damages sustained by the State of New Jersey.

102.     Under the NJ FCA, "knowing" and "knowingly" means that the defendant had actual knowledge of the information, acted in deliberate ignorance of the truth or falsity of the information or acted in reckless disregard of the truth or falsity of the information.  Knowledge

by the defendant is established without regard as to whether the defendant intended to defraud the state.

103.     The NJ FCA further provides for liability for those who conspire to defraud the state by getting a false or fraudulent claim allowed or paid.

**_The New Mexico Medicaid False Claims Act,_**
**_N.M. Stat. Ann. § 27-14-1 et seq. ("NM MFCA")_**

104.     Among other things, the NM MFCA provides that any person who presents or causes to be presented to the State of New Mexico a claim for payment under the Medicaid program, knowing that such claim is false or fraudulent, is liable for three times the amount of damages sustained by the state as a result of the violation.

105.     The NM MFCA further provides for liability for those who conspire to defraud the State of New Mexico by getting a claim allowed or paid under the Medicaid program knowing that such claim is false or fraudulent.

**_The New York False Claims Act,_**
**_N.Y. State Fin. § 187 et seq. ("NY FCA")_**

106.     Among other things, the NY FCA provides that any person who knowingly presents or causes to be presented false or fraudulent claims for payment or approval is liable for a civil penalty ranging from $6,000 up to $12,000 for each violation, plus three times the amount of damages, including consequential damages, sustained by the State of New York or local government as a result of the violations.

107.     Under the NY FCA, "knowing" and "knowingly" means that the defendant had actual knowledge of the information, acted in deliberate ignorance of the truth or falsity of the information or acted in reckless disregard of the truth or falsity of the information.  "Knowing" and "knowingly" require no proof of specific intent to defraud.

108.     The NY FCA further provides for liability for those who conspire to commit a violation of the Act.

**_The North Carolina False Claims Act,_**
**_N.C. Gen. Stat. § 1-605 et seq. ("NC FCA")_**

109.     Among other things, the NC FCA provides that any person who knowingly presents or causes to be presented false or fraudulent claims, for payment or approval to the State of North Carolina is liable for a civil penalty ranging from $5,500 up to $11,000 for each violation of the Act, plus up to three times the amount of damages sustained by the State of North Carolina.

110.     Under the NC FCA, "knowing" and "knowingly" means that the defendant had actual knowledge of the information, acted in deliberate ignorance of the truth or falsity of the information or acted in reckless disregard of the truth or falsity of the information.  Knowledge by the defendant is established without regard as to whether the defendant intended to defraud the state.

111.     The NC FCA further provides for liability for those who conspire to commit a violation of the Act.

**_The Oklahoma Medicaid False Claims Act,_**
**_63 Okla. Stat. Ann. § 5053 et seq. ("OK MFCA")_**

112.     Among other things, the OK MFCA provides that any person who knowingly presents or causes to be presented false or fraudulent claims, for payment or approval to an officer or employee of the State of Oklahoma is liable for a civil penalty ranging from $5,000 up to $10,000 for each violation of the Act, plus up to three times the amount of damages sustained by the State of Oklahoma.

113.     Under the OK FMCA, "knowing" and "knowingly" means that the defendant had

actual knowledge of the information, acted in deliberate ignorance of the truth or falsity of the information or acted in reckless disregard of the truth or falsity of the information.  Knowledge by the defendant is established without regard as to whether the defendant intended to defraud the state.

114.     The OK FMCA further provides for liability for those who conspire to commit a violation of the Act.

### The Rhode Island False Claims Act, R.I. Gen. Laws § 9-1.1-1 et seq. ("RI FCA")

115.     Among other things, the RI FCA provides that any person who knowingly presents or causes to be presented false or fraudulent claims for payment or approval to an officer or employee of the State of Rhode Island is liable for a civil penalty ranging from $5,000 up to $10,000, plus three times the amount of damages sustained by the State of Rhode Island as a result of the violation, plus the costs of a civil action brought to recover any such penalty or damages.

116.     Under the RI FCA, "knowing" and "knowingly" means that the defendant had actual knowledge of the information, acted in deliberate ignorance of the truth or falsity of the information or acted in reckless disregard of the truth or falsity of the information.  No specific intent to defraud is required.

117.     The RI FCA further provides for liability for those who conspire to defraud the State of Rhode Island by getting a false or fraudulent claim allowed or paid.

### The Tennessee Medicaid False Claims Act, Tenn. Code Ann. § 71-5-181 et seq. ("TN MFCA")

118.     Among other things, the TN MFCA provides that any person who presents or causes to be presented, to the State of Tennessee for payment under the Medicaid program,

knowing such claim is false or fraudulent, is liable for a civil penalty ranging from $5,000 up to $25,000, plus three times the amount of damages sustained by the State of Tennessee as a result of the violation.

119.    Under the TN MFCA, "knowing" and "knowingly" means that the defendant had actual knowledge of the information, acted in deliberate ignorance of the truth or falsity of the information or acted in reckless disregard of the truth or falsity of the information.  No proof of specific intent to defraud is required.

120.    The TN MFCA further provides for liability for those who conspires to defraud the State of Tennessee by getting a claim allowed or paid under the Medicaid program knowing such claim is false or fraudulent.

**The Texas Medicaid Fraud Prevention Act,**
**Tex. Hum. Res. Code Ann. § 36.001 et seq. ("TX MFCA")**

121.    Among other things, the TX MFCA provides that any person who knowingly presents or causes to be presented to the Texas Medicaid program a claim that contains a statement or representation the person knows or should know to be false, is liable for a civil penalty ranging from $5,000 up to $10,000 for each violation of the Act, escalated to $15,000 if the violation results in harm to an elderly person, plus up to two times the amount of damages sustained by the State of Texas.

122.    Under the TX MFCA, "knowing" and "knowingly" means that the defendant had actual knowledge of the information, acted in deliberate ignorance of the truth or falsity of the information or acted in reckless disregard of the truth or falsity of the information.  Knowledge by the defendant is established without regard as to whether the defendant intended to defraud the state.

*The Virginia Fraud Against Taxpayers Act,*
*Va. Code Ann. § 8.01-216.1 et seq. ("VA FCA")*

123.    Among other things, the VA FCA provides that any person who knowingly presents or causes to be presented false or fraudulent claims, for payment or approval to the State of Virginia is liable for a civil penalty ranging from $5,500 up to $11,000 for each violation of the Act, plus up to three times the amount of damages sustained by the State of Virginia.

124.    Under the VA FCA, "knowing" and "knowingly" means that the defendant had actual knowledge of the information, acted in deliberate ignorance of the truth or falsity of the information or acted in reckless disregard of the truth or falsity of the information.  Knowledge by the defendant is established without regard as to whether the defendant intended to defraud the state.

125.    The VA FCA further provides for liability for those who conspire to commit a violation of the Act.

*The Wisconsin False Claims for Medical Assistance Law,*
*Wis. Stat. § 20.931 et seq. ("WI MFCA")*

126.    Among other things, the WI MFCA provides that any person who knowingly presents or causes to be presented a false claim for medical assistance to an officer, employee or agent of the State of Wisconsin is liable for a civil penalty ranging from $5,000 up to $10,000 for each violation of the Act, plus up to three times the amount of damages sustained by the State of Wisconsin.

127.    Under the WI MFCA, "knowing" and "knowingly" means that the defendant had actual knowledge of the information, acted in deliberate ignorance of the truth or falsity of the information or acted in reckless disregard of the truth or falsity of the information.  Knowledge by the defendant is established without regard as to whether the defendant intended to defraud

the state.

128.　The WI FCL further provides for liability for those who conspire to defraud the State of Wisconsin by obtaining allowance or payment of a false claim for medical assistance.

## SPECIFIC ALLEGATIONS

### A.  Defendant Enters The Market for Prescription Overactive Bladder Drugs

129.　Overactive bladder affects upwards of 33 million Americans each year, with varying symptoms, including urinary urgency, frequency and urge incontinence.  This number is expected to increase significantly as the population of the United States ages.

130.　The market for prescription drugs indicated for the treatment of overactive bladder symptoms has long been cornered by "Big Pharma."

131.　When the U.S. Food and Drug Administration ("FDA") approved Sanctura (trospium chloride) in 2004, there were already several overactive bladder drugs on the market.

132.　Sanctura differed from all of the other overactive bladder drugs on the market in that it was a quaternary ammonium compound (rather than a tertiary amine compound). According to Defendant, due to this unique molecular structure, Sanctura caused fewer side effects and faster onset than competing drugs and did not cross the blood-brain barrier.

133.　In comparison with other overactive bladder medications, however, Sanctura had one significant shortcoming: *it was the only overactive bladder medication that had to be taken twice-a-day*.  Competing drugs needed to be taken only once-a-day.  As a result, *physicians generally prescribed Sanctura solely as a "last resort" medication.*

134.　In August 2007, the FDA approved SXR – an extended-release, *once-daily* formulation of Sanctura.

135.   Approximately one month later, Defendant acquired Esprit, which had previously acquired marketing rights to Sanctura.

136.   Defendant expected that the acquisition of Esprit, together with the imminent launch of SXR, would help the company capture significant market share relative to manufacturers of overactive bladder medications already on the market.

137.   SXR is generally considered a "Tier 3" or "Tier 4" prescription drug.  "Tier 3" or higher drugs are considered non-preferred by insurance companies, and their co-pays generally start at $50 per prescription.

138.   By contrast, the prescription overactive bladder medications manufactured by Defendant's larger competitors are "Tier 2" drugs.  As preferred, branded drugs, their co-pays range from $25 to $45 – significantly less than the typical co-pay for SXR.

139.   Some prescription drugs are omitted from an insurance plan's formulary altogether, which means that a patient filling a prescription for that drug will pay the full out-of-pocket price ("FOOP").   The FOOP for all prescription overactive bladder drugs is approximately $150.

**B.   Defendant's Managers Overseeing Marketing And Sales of SXR Are Unfamiliar With Managed Care and Regulations Regarding Medicare Part D**

140.   In an effort to obtain a significant share of the market, Defendant – through its Urologics Division – immediately began to target urologists and primary care physicians, who prescribed medications for overactive bladder, for increased sales.

141.   In or about February 2009, however, Defendant laid off approximately ninety percent (90%) of its Urologics Division, including all upper management previously employed by Esprit.

28

142.     Those from Esprit had substantial experience in the urology marketplace and, in particular, with managed care; however, the remaining managers (*i.e.*, those who had been employed by Defendant before it acquired Esprit) did not.

143.     Significantly, Richard Coffman ("Coffman") became the head of the new urology sales division, despite the fact that his prior experience was limited to the field of *dermatology*.

144.     In addition to this shortcoming, the new 40-person sales team was too small to cover the entire United States and, as a result, there were no representatives covering large parts of the country.   Many doctors became frustrated by this lack of accessibility and refused to prescribe SXR.

145.     In December 2009, Defendant's executives decided to merge the company's medical dermatology and urology divisions into one group, called the Specialty Division.

146.     Significantly, the core management of the Specialty Division consisted of those with *experience in dermatology only*.   Because many of those individuals were new to the pharmaceutical industry and had *no managed care experience whatsoever*, they were entirely unfamiliar with the various federal regulations and statutes governing the marketing and sales of SXR, including, but not limited to, regulations regarding Medicare Part D.

147.     Indeed, several managers of Defendant's Specialty Division had "no idea" how to fit the SXR marketing scheme into the regulatory framework for managed care and Medicare Part D.  This would become a constant problem for the SXR sales team.

### C.   Defendant's Early Attempts to Market And Sell SXR Were Largely Unsuccessful

148.     Sales of SXR under the Specialty Division immediately proved disappointing both because the sales team operated with too few people (stretched over large sales territories)

with inadequate budgets and because of the drug's considerable expense to patients.

149.    To combat the problem of patient expense, Defendant promoted a voucher program in January 2010 by which it offered patients a free 30-day trial of SXR.

150.    Very few of the vouchers were redeemed, in large part because patients covered by Government Health Programs were ineligible to use them.

151.    As a result, Defendant became desperate to recoup its initial investment and to compete in the marketplace for prescription overactive bladder medications.

**D.  To Increase Sales, Defendant Devised and Launched its Illegal Marketing and Kickback Scheme**

152.    In May 2010, Relator attended Defendant's national sales meeting in Huntington Beach, California.

153.    At the meeting, Defendant's executive team introduced an aggressive, nationwide discount card program, which they called the "Pay No More Than" program based on Defendant's promise that the patient would "pay no more than" $30 per month for SXR, regardless of whether he or she was insured.

154.    Defendant's executives clearly believed that SXR would gain a large amount of market share with the launch of the PNMT discount card program and presented examples of *dermatology companies* that had achieved great success using programs with similar features.

155.    At a marketing overview presented on May 17, 2010, Jeff Ehrhardt – Defendant's Marketing Director – described the PNMT discount program as a "game-changer."

156.    To effectuate the new marketing campaign, Defendant provided each of its sales representatives with thousands of PNMT discount cards and instructed them to distribute the cards directly to urologists in their sales territories with a promise that the urologists' patients

would "pay no more than" one dollar per day for SXR.

157.     A patient prescribed SXR and using the PNMT Program would receive two discount cards.  The first card, which was for patients with insurance, instructed the pharmacist to submit the card as an insurance claim.  The second card, which was for patients without insurance, instructed pharmacists to submit the card as a cash payment.

158.     Each PNMT Program discount card contained a disclaimer, stating "[t]his card is not valid for prescriptions reimbursed under Medicare, Medicaid, or any other federal or state program, or where prohibited by law."

159.     Nonetheless, Defendant coached its sales force to instruct physicians that, with the PNMT discount card program, Defendant had "solve[d] the managed care problem," and that "[a]ll this talk about tiers and insurance is not necessary.  We think we have found a way around it."

160.     To further emphasize this point, Defendant urged its salespeople to show prescribing physicians managed care charts for other overactive bladder medications and then tear them in half – making the point that the PNMT discount card covered *every patient, regardless of insurance status*.

161.     At the national sales meeting in May 2010, Relator attended various sales representative break-out sessions during which Defendant's management discussed how to use the PNMT discount cards purportedly within the framework of Medicare Part D.

162.     During a workshop conducted on May 19, 2010, Coffman explained that "it is not illegal to have pharmacists run the [PNMT discount cards] as cash," even for Medicare Part D patients.

163.     One day later, Robert McGreer – one of Defendant's Area Managers, based out of

Utah – explained that pharmacists would almost certainly process transactions for Medicare Part D patients presenting PNMT discount cards as "cash" transactions.

164.    McGreer specifically cited the fact that he had given the PNMT discount cards to a "pharmacist friend" and asked him what he would do if a Medicare Part D patient came to him with these cards.  McGreer stated that the friend looked at the cards, and then said, "I would run them through as a cash patient."

165.    Neither Coffman nor McGreer (nor anyone else at Defendant) recognized that this was a problem.

166.    In one or more PowerPoint slideshows, Defendant's management highlighted the goals and objectives of the PNMT discount card program and provided a verbatim script for Defendant's sales representatives to use when "Selling the 'Value' of the Pay No More Cards." Significantly, the script urged SXR sales representatives to make the following statements to urologists and other prescribing physicians:

  a.   "Dr., these are not rebate cards…this is a guarantee";

  b.   "These cards allow you to write a script for SANCTURA XR capsule, hand the card to the patient and send them to the pharmacist *and not have to think about which insurance each patient has*";

  c.   "Please note doctor that this is a way to change the pharmacy price to $30";

  d.   "These cards ensure that your patients pay no more than $30";

  e.   "This card allows your incontinent patients to receive a prescription of SANCTURA XR capsule at no more than $1 per day guaranteed";

  f.   "Does $30 sound reasonable for your patients?";

  g.   "Doctor, all you need to do is prescribe SANCTURA XR capsule

for the (patient type we agreed on) and hand them this card"; and

    h.  "You can be confident that your patient will pay no more than $30, *no matter their insurance status*."

167.    In addition, Defendant's management distributed a hand-out to SXR sales representatives, highlighting certain "[p]roven practices among field forces to maximize voucher/card programs":

    a.  "Pick top prescribers to receive initial vouchers, for maximum utilization."

    b.  "Use Co-Pay assist voucher/Check with physicians who already write your product, but ask them to use the voucher/card for new patients who could not afford the therapy earlier."

    c.  "Make physician accountable for vouchers received to make them understand the value."

    d.  "Place vouchers/cards in examination room if allowed."

    e.  "Place vouchers/cards where prescriptions are printed out."

    f.  "Place vouchers/cards at check out counter.  Even if patient picks up the voucher themselves, it will increase the possibility of prescription being filled."

    g.  "Place vouchers/cards at nurse's station."

    h.  "Detail Pharmacists and Techs to let them know about the current program."

    i.  "If patient receives a multi use voucher or card, tell them to keep it in glove compartment of car so they won't forget it when at the pharmacy for refills."

    j.  "Field management can put in place contests, to reward reps who have a high redemption rates."

168.    As demonstrated by the foregoing, Defendant's illegal marketing and kickback scheme extended to sales representatives in Defendant's sales territories throughout the country.

**E.  Defendant Continued to Perpetrate Its Illegal Marketing and Kickback Scheme**

169.    After the national sales meeting in May 2010, the PNMT discount card program

quickly became the cornerstone of Defendant's nationwide SXR sales strategy.

170.    On June 16, 2010, Coffman sent an e-mail to Relator and several other sales representatives explaining the "1, 2, 3's of the [PNMT Discount Card Program]," as follows:

> 1.    This is not a rebate or discount, but a guarantee that all of your patients (regardless of insurance) will pay no more than $1 per day for their OAB treatment.
>
> **2.    All you have to do is find a patient that needs [Sanctura] XR, give them a script and the card and send them to the pharmacy.**
>
> 3.    Allergan will take on the financial burden to help ensure that you do not even have to ask or care what type of insurance your patients have or even if they have insurance.

171.    Coffman's June 16, 2010 e-mail further advised the sales representatives, including Relator:

> Keep it simple.  Only go into the specifics of how the card works if the doctor asks or needs more information to get their heads around the program.  **If asked about Part D or Medicaid, refer back to step #2.**  As all of you know or are beginning to understand, Urologists are for the most part very bottom line individuals.  Tell them how this program will help them and what they need to tell the patient and then repeat this info as many times as it takes for them to get it down.

172.    As demonstrated by the language of Coffman's e-mail, Defendant intended that physicians would send Medicare Part D and Medicaid patients to the pharmacy with prescriptions for SXR and their PNMT discount cards and that pharmacists would allow such patients to benefit from the PNMT discount card program by processing the transactions using the "cash" option, which – if the program was properly administered – should have been reserved for *uninsured patients only*.

173.    In an e-mail dated July 8, 2010, John Graham ("Graham") – Relator's direct

34

supervisor – instructed his sales team to emphasize the uniqueness of the PNMT discount card program to prescribing physicians, as follows:

> Please keep selling the referral patient and the card until your docs and their staff start showing up for more scripts, redeemed [Pay No More Than] cards and are telling you how great the program is…
>
> You have to be passionate when selling this! Have some fire and conviction in your voice… whatever you need to do to get your customer to see the light…
>
> One practice that I have seen and like a lot is:
>
> Pulling out a rebate from the closet for each of our competitors… then going through them one by one quickly noting the benefit to the patient… even our own $40/$30/$30 card may be a good idea here!... then show the [Pay No More Than] card and explain how it is different from any other program… and what some of the benefits are to the patient AND the doc AND their staff!
>
> (You can return the other rebates to the sample closet after you have shown the doc why they shouldn't bother using it ☺ ).

174.   In connection with the PNMT discount card program, Defendant's sales representatives were also taught to specifically target those physicians with patients covered by Government Health Programs, such as Medicare Part D and Medicaid.

175.   A hand-out titled "Sanctura XR Data Analysis/Pre-Call Planning Exercise," which was distributed to sales representatives at Defendant's national sales meeting in May 2010, demonstrates that almost sixty percent (60%) of one representative's sales of SXR were attributable to Government payers.  Defendant's managers regularly used examples such as this to show the significant number of patients covered by Government Health Programs who could purportedly benefit from participating in the PNMT discount card program.

176.   At the Specialty Pharmaceuticals T3 POA Meeting, held in Dallas, Texas from September 14-16, 2010, Relator asked Coffman whether there had been any "problems"

regarding the PNMT discount cards and, more specifically, whether the cards were not being accepted in certain cases.

177.    In response to Relator's inquiry, Coffman told Relator that there had been "some problems" with pharmacists who did not know "what to do" with Medicare Part D patients, but that "unfortunately" Defendant's salespeople could not "coach the pharmacists."

178.    When specifically asked about the *legality of the PNMT discount card program*, Coffman stated that the program was "not illegal" and that "[i]f a prescription is run through a pharmacy as a cash transaction, then that prescription is not a Medicare prescription."

179.    It became clear to the Relator that while Defendant's "official" position was that the PNMT discount cards could not be used by patients covered by Medicare, Medicaid and other Government Health Programs, Defendant knew that pharmacists would process prescriptions for those patients using the "cash" transaction option despite the illegality of doing so and, further, intended for pharmacists to do so.

180.    Notably, Defendant's own internal data revealed that the average age of patients redeeming PNMT discount cards for SXR was sixty-seven (67) years old – making it very likely that a significant percentage of such patients were Medicare beneficiaries.

181.    Throughout the relevant time period, Defendant's management expected its sales force to aggressively distribute the PNMT discount cards for SXR.

182.    To that end, Defendant closely tracked redemptions of the PNMT discount cards and the sales representatives responsible for distributing them.  Sales representatives regularly received reports tracking sales and PNMT discount card redemptions of others across the nation.

183.    Defendant's management communicated to sales representatives that, if the company's sales increased, the sales representatives would be eligible for higher bonuses.

184.   Defendant's management also maintained detailed databases containing information regarding sales of SXR and other drugs.  The information contained in those databases included:

    a.   Type of transaction (*i.e.*, insurance or cash);

    b.   Sales territory in which transaction occurred;

    c.   Pharmacy information (*i.e.*, Name, Address, City, State, and Zip);

    d.   Patient information (*i.e.*, Date Written, Date Filled, Days Til [sic] Filled, Age, and Sex);

    e.   Physician information (*i.e.*, Last Name, First Name, Address, City, State, and Zip);

    f.   Patient Rx Cost;

    g.   Patient Benefit;

    h.   Patient Paid Out of Pocket; and

    i.   Rx Quantity.

185.   By way of example, one SXR database – current through October 2010 –  appears as follows:

| Sanctura XR | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Averages | | | | | $100.10 | $67.32 | $32.78 | 33 |
| | | Pharmacy Info. | | Patient Info. | | | | Physician Info. | | | | |
| Type | Territory ID | | Date Written | Date Filled | | | | | Patient Rx Cost | Patient Benefit | Patient Paid Out of Pocket | Rx Quantity |
| INS | 10107 | | 10/20/2010 | 10/21//2010 | | | | | 155.02 | 125 | 30.02 | 30 |
| CSH | 10107 | | 8/7/2010 | 9/12/2010 | | | | | 120 | 90 | 30 | 30 |

186.   According to the data maintained by Defendant, sales representatives in Defendant's Buffalo and Rochester territories had 47 and 72 redemptions, respectively, through October 24, 2010 -- well above the national average of 31.2 redemptions.

187.   The informational databases maintained by Defendant detail which physicians in

counties within the Western District of New York prescribed SXR, as well as which pharmacies in those counties filled prescriptions during the relevant period.

**F.   Defendant Began to Criticize Relator's Work Performance After Relator Expressed Concerns About the Legality of the PNMT Discount Card Program**

188.    At the national sales meeting in May 2010, Relator approached Graham and expressed her concerns that the PNMT discount card program, as explained by Coffman and others, might violate Medicare regulations.  Relator believed that this might be the case because she had been told in the past, by former managers and co-workers from Esprit, that similar discount programs constituted "Medicare Fraud."

189.    In response to Relator's comments, Graham nodded his head to indicate that he understood what Relator meant and said, "Let's just see how this goes."   Relator understood this to mean that she should not express any further concerns, or ask any questions, about the legality of the PNMT discount card program.

190.    Other members of the SXR sales team seemed very optimistic about the PNMT discount card program, and Relator was made to feel that she was not being a "team player."

191.    Nonetheless, Relator felt that the PNMT discount card program was unethical at best and illegal at worst and, accordingly, refused to promote the use of the PNMT discount cards in the aggressive manner that Defendant promoted.

192.    The result was that Relator had very few redemptions of PNMT discount cards for SXR as compared to the rest of the sales force.

193.    Relator received several e-mails regarding her low redemption rate and, in or around September 2010, Graham accompanied Relator on a sales call to an urologist's office.

194.    Based on Graham's evaluation of Relator's performance, it was clear that Graham

considered her ability to aggressively market PNMT discount cards for SXR to be of paramount importance.

195.    Indeed, several of Graham's comments to Relator were related solely to her ability to incorporate the PNMT discount card program into the discussion regarding SXR.

196.    Under the guise of "protecting her," Graham also informed Relator that she was being "looked at" because of the low redemption rate of PNMT discount cards that she distributed for SXR and that Coffman previously inquired as to why Relator had so few redemptions.

197.    Graham directed Relator to increase her PNMT discount card redemption rate immediately and told her to "beg doctors for help if [she had to]."

198.    Furthermore, when the urologist with whom Graham and Relator went to visit asked if Medicare Part D patients could utilize the PNMT discount cards, Graham pointed to the cash option, responded "yes," and explained that such patients could be run through the pharmacy as "cash" patients.

199.    Although Defendant's management would regularly accompany sales representatives on sales calls to evaluate their performance, Relator thought this particular "ride-along" was unusual given the comments made by Graham and the fact that that Graham himself had participated.  In addition, Graham had never before written a field contact report about Relator in the more than nineteen months that he had been her supervisor, yet the one he sent after this "ride-along" was overwhelmingly negative.  As a result, Relator became concerned about her employment at Defendant.

200.    After Relator expressed her concerns about the legality of the PNMT discount card program at the September 2010 meeting in Dallas, Graham expressed additional

dissatisfaction with Relator's job performance.

201.    On October 4, 2010, Graham presented Relator with a memorandum that detailed the alleged deficiencies with her performance.

202.    Significantly, the memorandum noted Defendant's dissatisfaction with the lower-than-average number of PNMT discount cards for SXR that had been distributed by Relator and redeemed.

203.    The memorandum also indicated that, to meet Defendant's minimum acceptable standards of performance, Relator would have to (i) drastically increase the number of SXR prescriptions written in her territory over the following sixty days, and (ii) achieve a minimum of one incremental discount card redemption per week over the same period.

204.    In January 2011, Relator attended Defendant's West Region Meeting in Scottsdale, Arizona, where the PNMT discount card program continued to be promoted.

205.    Thereafter, on February 22, 2011, Graham and Relator again met to discuss her job performance.

206.    Graham informed Relator that Defendant continued to consider her a poor performer and noted that she had failed to improve her performance since the October 4, 2010 review.  Defendant placed Relator on "Counseling Review," an administrative sanction that is typically a precursor to termination.

207.    Eventually, Relator left the company on May 6, 2011.

### G.  **Defendant Violated The Anti-Kickback Statute**

*Unlawful Remuneration to Pharmacists*

208.    The Anti-Kickback Statute provides penalties for individuals or entities that, among other things, knowingly and willfully *offer, pay, solicit or receive* remuneration to induce

the referral of any business that may be reimbursable under Government Health Programs.

209.     A violation of the Anti-Kickback statute is considered a felony, punishable by a fine of up to $25,000 and imprisonment for up to five years.

210.     The Medicare and Medicaid Patient and Program Protection Act of 1987 authorizes the exclusion of an individual or entity from participation in the Medicare and Medicaid programs if it is determined that the party has violated the Anti-Kickback Statute.  In addition, the Balanced Budget Act of 1997 amended the Act to include an administrative civil money penalty provision for violating the Anti-Kickback Statute.  The administrative sanction is $50,000 for each act and an assessment of not more than three times the amount of remuneration offered, paid, solicited or received, without regard to whether a portion of such remuneration was offered, paid, solicited or received for a lawful purpose.

211.     In accordance with the Anti-Kickback Statute, Medicare and Medicaid regulations prohibit drug manufacturers from paying remuneration to pharmacists, among others, with the intent to induce referrals.

212.     Such remuneration amounts to a kickback and can increase the expenditures paid by government-funded health programs by leading to overutilization of prescription drugs and excessive reimbursements.

213.     Kickbacks also have the effect of reducing a patient's healthcare choices as unscrupulous or unknowing physicians (or pharmacists) steer patients to certain drug products based on their own financial interests rather than the patients' medical needs.

214.     Significantly, the Anti-Kickback Statute has been interpreted to include arrangements where only *one purpose* of the remuneration was to induce further referrals.

215.     Although the Anti-Kickback Statute contains eight statutory exceptions from its

statutory prohibitions and other regulatory "safe harbors" have been enacted to exclude certain types of conduct from the reach of the Anti-Kickback Statute, none of these statutory exceptions or regulatory safe harbors protects Defendant's conduct.

216.    As detailed above, Defendant's sales representatives were coached to inform urologists, prescribing physicians, pharmacists and others that the PNMT discount cards can be used by patients covered under Government Health Programs because pharmacists can simply process sales to such patients as "cash" transactions.

217.    By processing the PNMT discount cards for patients covered under Government Health Programs using this "cash" transaction option, pharmacists receive full payment for the drug (which is greater than the reimbursement amount they would receive from Government Health Programs for filling prescriptions of competing drugs), plus a monetary fee, and they avoid the risk of non-collection.

218.    In other words, the PNMT discount card program creates an economic incentive for pharmacists to dispense SXR.

219.    In this way, Defendant has unlawfully offered or paid valuable remuneration to pharmacists with the clear purpose of inducing referrals.

220.    Notably, Defendant's PNMT discount card program does not include any features designed to minimize the unlawful incentives offered or paid to pharmacists or to eliminate the possibility of improper processing.

221.    Under the PNMT discount card program, all patients are provided with *two cards* – one for use by insured patients and one for use by uninsured (or "cash") patients.  Thus, either the patient or the pharmacist can – and often does – choose the "cash" option if doing so will result in a lower out-of-pocket cost to the patient and/or a higher reimbursement amount for the

pharmacist.

222.   Moreover, Defendant makes no attempt to verify any patient's insurance status prior to the patient's redemption of the PNMT discount cards for SXR.  Although the PNMT discount cards contain a small disclaimer noting that patients may not use the PNMT discount cards if they are covered under a Government Health Program, Defendant specifically markets the PNMT discount cards for use by such patients.

### *Unlawful Remuneration to Medicare Beneficiaries*

223.   Under 42 U.S.C. § 1320a-7a(a)(5), a person who offers or transfers any remuneration *to a Medicare beneficiary* may also be liable for civil money penalties of up to $10,000 for each wrongful act if the person knew or should have known such remuneration would be likely to influence the beneficiary's selection of a particular supplier of Medicare-payable items.

224.   The Office of the Inspector General has concluded that "cost-sharing subsidies provided by pharmaceutical manufacturer [patient assistance programs] pose a heightened risk of fraud and abuse under the anti-kickback statute," and has further noted:

> [T]he core question is whether the [Anti-Kickback Statute] would be implicated if a manufacturer of a drug covered under Part D were to subsidize cost-sharing amounts (directly or indirectly through a [patient assistance program] incurred by Part D beneficiaries for the manufacturer's product.  Consistent with our prior guidance addressing manufacturer cost-sharing subsidies in the context of Part B drugs, we believe such subsidies for Part D drugs would implicate the [Anti-Kickback Statute] and pose a substantial risk of program and patient fraud and abuse.  **Simply put, the subsidies would be squarely prohibited by the statute, because the manufacturer would be giving something of value (i.e., the subsidy) to beneficiaries to use its product.  Where a manufacturer [patient assistance program] offers subsidies tied to the use of the manufacturer's products (often expensive drugs used by patients with chronic illnesses), the subsidies**

43

> **present all of the usual risks of fraud and abuse associated with kickbacks, including steering beneficiaries to particular drugs; increasing costs to Medicare; providing a financial advantage over competing drugs; and reducing beneficiaries' incentives to locate and use less expensive, equally effective drugs.**

Office of the Inspector General, *Special Advisory Bulletin on Patient Assistance Programs for Medicare Part D Enrollees*, 70 Fed. Red. 70623 (Nov. 22, 2005), at 6-7 (emphasis added).

225. On occasion, the Office of Inspector General has concluded that patient assistance programs that operate entirely outside Medicare Part D pose a reduced risk of fraud and abuse.

226. To avoid violating the Anti-Kickback Statute, however, such programs must satisfy various requirements, including, but not limited to, the following:

    a. Enrollees must obtain drugs without using Part D insurance benefits;

    b. No claims for payment for drugs provided outside the Part D benefit may be filed with a Part D plan or by an enrollee, and any assistance cannot be counted toward an enrollee's true out-of-pocket spending or total Part D spending for any purpose; and

    c. Companies operating the programs must (i) notify the Medicare beneficiary's Part D provider that a prescription drug is being provided outside the Part D benefit, (ii) enter into a data-sharing agreement with the Centers for Medicare and Medicaid Services, and (iii) consider the beneficiary's eligibility for assistance on a case-by-case basis based on the beneficiary's financial need.

*See* Office of the Inspector General, *Special Advisory Bulletin on Patient Assistance Programs for Medicare Part D Enrollees*, 70 Fed. Red. 70623 (Nov. 22, 2005), at 11-12.

227. Defendant has violated the Anti-Kickback Statute by offering Medicare beneficiaries something of value – a highly discounted price for SXR – with knowledge that the discounts are likely to influence (and have influenced) the beneficiary's selection of SXR over other overactive bladder medications.

228. The $30 per month that a patient pays for SXR under the PNMT discount card

program is generally less than the patient's co-pay for competing drugs.

229.    Moreover, assuming prescriptions for SXR are properly processed, patients covered under Government Health Programs will typically be responsible for co-pays ranging from $50-60 – *i.e.*, up to $30 more than if the prescriptions are improperly processed as "cash" transactions.  Accordingly, patients have an incentive to favor the improper "cash" transaction option under the PNMT discount card program.

230.    Defendant's PNMT discount card program does not contain any safeguards to minimize the risk of fraud and abuse under Medicare Part D and, in fact, was specifically designed and marketed by Defendant to encourage the unlawful exploitation of Government Health Programs.

231.    Notably, the discounts offered by Defendant also do not fall within any of the eight statutory exceptions included in the Anti-Kickback Statute or any of the other regulatory safe harbors.

### *False and/or Fraudulent Certifications*

232.    In light of the foregoing, both Defendant and the pharmacists accepting unlawful remuneration from Defendant filed false and/or fraudulent certifications in connection with their participation in various Government Health Programs.

233.    As Medicare providers, Defendant and the pharmacists were required to enter into provider agreements with the Government pursuant to which they certified that they would comply with all laws and regulations concerning proper practices for Medicare providers, including, but not limited to, the Anti-Kickback Statute.

234.    Compliance with the Anti-Kickback Statute is a condition of payment by the Medicare program.

235.     Accordingly, Defendant has presented, made, used, or caused to be presented, made or used numerous False Claims in violation of the FCA.

**H.  Defendant Violated The Medicaid Rebate Statute**

236.     The Medicaid Rebate Statute is designed to return money to the Medicaid program in the form of rebates from drug manufacturers.

237.     To have prescription drugs that they produce eligible for Medicaid payment, all drug manufacturers must provide "best price" information to CMS, which then uses such information to calculate rebates payable to the appropriate Medicaid program.

238.     More specifically, drug manufacturers provide "best price" and "average manufacturer price" information to CMS, which then calculates a unit rebate amount and provides that information to state Medicaid agencies.

239.     The individual States then utilize data provided by pharmacies, together with the unit rebate amount, to calculate the rebate owed to them by the manufacturer.

240.     The Medicaid Rebate Statute provides, in relevant part, that the term "best price" "shall be inclusive of cash discounts, free goods that are contingent on any purchase requirement, volume discounts, and rebates (other than rebates under this section)."  Significantly, the statute also provides that amounts received by the States under the "best prices" program "shall be considered to be a reduction in the amount expended under the State plan in the quarter for medical assistance for purposes of calculating the federal contribution to state Medicaid programs."

241.     Manufacturers of prescription drugs are responsible for ensuring the integrity of the data that they produce to the Government for reimbursement purposes.  Indeed, the entire "best price" system is based upon the assumption that manufacturers will *honestly and*

*accurately* convey "best price" and "average manufacturer price" information to CMS.

242.     Any overstatement of "best price" – intentional or unintentional – may cause an underpayment in rebate amounts by manufacturers to the States that will ultimately result in falsely inflated submissions by the States to the federal government for reimbursement of Medicaid expenditures.  This is precisely what occurred here.

243.     Since its launch of the PNMT discount card program in May 2010, Defendant failed to accurately report "best price" information for SXR to CMS.

244.     Accordingly, Defendant paid lower rebate amounts to State Medicaid programs which, in turn, have sought falsely inflated contributions from the federal government.

245.     Defendant's conduct resulted in significant damages to the State Plaintiffs and in the form of underpayment of Medicaid rebates by Allergan and, to the United States, in the form of overpayments to State Medicaid programs.

## I.     Defendant Exploited the Medicare Part D "Donut Hole"

246.     Medicare Part D, enacted as part of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, went into effect on January 1, 2006.  It provides prescription drug coverage for all individuals entitled to benefits under Medicare Part A or enrolled in Medicare Part B who join a Prescription Drug Plan or a Medicare Advantage Plan. As of April 2010, 27.6 million Americans were enrolled in Medicare Part D.

247.     Significantly, Medicare beneficiaries who are also covered by State Medicaid programs receive prescription drug coverage through Medicare Part D.

248.     When the PNMT discount program was launched in 2010, the standard Medicare Part D benefit provided beneficiaries with up to $2,830 in prescription drug coverage, once the

beneficiary satisfied a $310 deductible and paid twenty-five percent (25%) co-insurance payments.

249.    After the initial $2,830 threshold was reached, however, prescription drug coverage disappeared and the beneficiary was required pay the full true out-of-pocket price ("TrOOP") for their prescription drugs until those expenses reached the catastrophic coverage threshold of $4,550.

250.    The coverage gap between the $2,830 initial coverage limit and the $4,550 catastrophic coverage threshold is often referred to as the "donut hole."

251.     Once the "donut hole" is crossed (*i.e.*, the catastrophic coverage threshold is reached), the beneficiary's personal obligation is limited to the greater of a five percent (5%) co-insurance payment, or a $2.50 co-pay for a generic drug, or a $6.30 co-pay for a brand-name drug.

252.    In other words, Medicare Part D covers up to ninety-five percent (95%) of the prescription drug costs for patients who reach the catastrophic coverage threshold.

253.    Many Medicare Part D beneficiaries spend enough on prescription drugs to enter the "donut hole."  Of those reaching the "donut hole," however, only a small percentage typically reaches the catastrophic coverage threshold.

254.    The United States Department of Health and Human Services estimates that more than a quarter of Medicare Part D beneficiaries stop taking their prescribed prescription drugs once they reach the "donut hole" and become required to pay the full TrOOP for such drugs.

255.    Defendant's marketing of the PNMT discount card program for use by Medicare patients constitutes illegal exploitation the Medicare Part D "donut hole."

256.    Indeed, Medicare Part D patients who use PNMT discount cards for SXR – and are, therefore, treated as "cash" patients by their pharmacists – will take significantly longer to reach the initial coverage limit pushing them into the "donut hole."

257.    Although such patients benefit from paying a lower price for their prescriptions of SXR, the United States is damaged with every PNMT discount card that is redeemed in this manner.  Because Medicaid beneficiaries receive prescription drug benefits through Medicare Part D, the State Plaintiffs are also damaged by Defendant's exploitation of the "donut hole."

258.    Moreover, a Medicare Part D beneficiary who is between the initial coverage limit and the catastrophic coverage threshold (*i.e.*, one who is in the "donut hole") is actually harmed by using Defendant's PNMT discount cards in that they have increased difficulty reaching the catastrophic coverage threshold.

## DAMAGES SUSTAINED BY THE GOVERNMENT
## AS A RESULT OF DEFENDANT'S CONDUCT

259.    The foregoing paragraphs demonstrate that Defendant has engaged in an illegal marketing and kickback scheme.

260.    This scheme is pervasive across and amongst all of Defendant's facilities and personnel throughout the country.

261.    The United States and the State Plaintiffs have been directly damaged by Defendant's scheme.

262.    Defendant has repeatedly and consistently submitted False Claims to Government Health Programs in violation of federal and state law, including, but not limited to, the FCA and the State Acts, in connection with Defendant's marketing and sale of SXR.

263.   Defendant's False Claims were made, used, presented, or caused to be made, used or presented, with the intent to gain an unfair economic benefit at the expense of Government Health Programs and law-abiding taxpayers.

264.   Government Health Programs, including, but not limited to, Medicare and Medicaid, have reasonably relied upon the False Claims by Defendant to their detriment.

265.   Had the Government been aware of Defendant's unlawful practices and methodologies, the False Claims submitted by Defendant would not have been paid.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
**Federal False Claims Act**
**31 U.S.C. § 3729(a)(1)**

266.   Relator repeats and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

267.   Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly presented, or caused to be presented, to an officer or employee of the United States Government a false or fraudulent claim for payment or approval in violation of 31 U.S.C. § 3729(a)(1).

268.   As a result of Defendant's conduct, the United States has been damaged in an amount to be proven at trial.

### SECOND CAUSE OF ACTION
**Federal False Claims Act**
**31 U.S.C. § 3729(a)(1)(A)**

269.   Relator repeats and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

270.    Through the acts more particularly set forth in the foregoing paragraphs,

Defendant has knowingly presented, or caused to be presented, false or fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A).

271.    As a result of Defendant's conduct, the United States has been damaged in an amount to be proven at trial.

272.    The United States is entitled to the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

**THIRD CAUSE OF ACTION**
**Federal False Claims Act**
**31 U.S.C. § 3729(a)(2)**

273.    Relator repeats and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

274.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used, or caused to be made or used, false records or statements to get false or fraudulent claims paid or approved by the Government in violation of 31 U.S.C. § 3729(a)(2).

275.    As a result of Defendant's conduct, the United States has been damaged in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**Federal False Claims Act**
**31 U.S.C. § 3729(a)(1)(B)**

276.    Relator repeats and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

277.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used, or caused to be made or used, false records or statements

51

material to false or fraudulent claims within the meaning of 31 U.S.C. § 3729(a)(1)(B).

278.    As a result of Defendant's conduct, the United States has been damaged in an amount to be proven at trial.

279.    The United States is entitled to the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

## FIFTH CAUSE OF ACTION
**Federal False Claims Act**
**31 U.S.C. § 3729(a)(3)**

280.    Relator repeats and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

281.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has conspired to defraud the Government by getting false or fraudulent claims allowed or paid to in violation of 31 U.S.C. § 3729(a)(3).

282.    As a result of Defendant's conduct, the United States has been damaged in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION
**Federal False Claims Act**
**31 U.S.C. § 3729(a)(1)(C)**

283.    Relator repeats and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

284.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has conspired to commit violations of the FCA within the meaning of 31 U.S.C. § 3729(a)(1)(C).

285.    As a result of Defendant's conduct, the United States has been damaged in an

amount to be proven at trial.

286.   The United States is entitled to the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

## SEVENTH CAUSE OF ACTION
### Federal False Claims Act
### 31 U.S.C. § 3729(a)(7)

287.   Relator repeats and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

288.   Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used, or caused to be made or used, false records or statements to conceal, avoid, or decrease its obligations to pay or transmit money or property to the Government in violation of 31 U.S.C. § 3729(a)(7).

289.   As a result of Defendant's conduct, the United States has been damaged in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION
### Federal False Claims Act
### 31 U.S.C. § 3729(a)(1)(G)

290.   Relator repeats and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

291.   Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used, or caused to be made or used, false records or statements material to its obligations to pay or transmit money or property to the Government, and/or knowingly concealed or knowingly and improperly avoided or decreased its obligations to pay or transmit money or property to the Government, within the meaning of 31 U.S.C. §

3729(a)(1)(G).

292.    As a result of Defendant's conduct, the United States has been damaged in an amount to be proven at trial.

293.    The United States is entitled to the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

## NINTH CAUSE OF ACTION
### Federal False Claims Act
### 31 U.S.C. § 3729(a)(1)(D)

294.    Relator repeats and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

295.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has possessed or controlled property or money used, or to be used, by the Government and knowingly delivered, or caused to be delivered, less than all of that property or money within the meaning of 31 U.S.C. § 3729(a)(1)(D).

296.    As a result of Defendant's conduct the United States has been damaged in an amount to be proven at trial.

297.    The United States is entitled to the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

## TENTH CAUSE OF ACTION
### California False Claims Act
### Cal. Gov't Code §§ 12651(a)(1), (2), (3) and (7)

298.    Relator repeats and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

299.    This is a claim for treble damages and penalties under the CA FCA.

300.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly presented or caused to be presented false or fraudulent claims to the California State Government for payment or approval, in violation of Cal. Gov't Code § 12651(a)(1).

301.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the California State Government to approve and pay false and fraudulent claims, in violation of Cal. Gov't Code § 12651(a)(2).

302.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has conspired to defraud the California State Government by inducing it to approve and pay false and fraudulent claims, in violation of Cal. Gov't Code § 12651(a)(3).

303.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used or caused to be made or used false records or statements to conceal, avoid, or decrease obligations to pay or transmit money or property to the California State Government, in violation of Cal. Gov't Code § 12651(a)(7).

304.    The California State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, has paid and continues to pay claims that would not be paid but for the Defendant's illegal and hidden marketing and kickback scheme.

305.    As a result of Defendant's conduct, the State of California has been damaged, and continues to be damaged, in an amount to be determined at trial.

306.    The State of California is entitled to the maximum penalty of $10,000 for each

and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

### ELEVENTH CAUSE OF ACTION
**Colorado Medicaid False Claims Act**
**Colo. Rev. Stat. §§ 25.5-4-305(a), (b), (f) and (g)**

307.    Relator repeats and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

308.    This is a claim for treble damages and penalties under the CO MFCA.

309.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly presented or caused to be presented false or fraudulent claims to the Colorado State Government for payment or approval, in violation of Colo. Rev. Stat § 25.5-4-305(a).

310.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Colorado State Government to approve and pay false and fraudulent claims, in violation of Colo. Rev. Stat § 25.5-4-305(b).

311.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has conspired to defraud the Colorado State Government by inducing it to approve and pay false and fraudulent claims, in violation of Colo. Rev. Stat § 25.5-4-305(g).

312.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used or caused to be made or used false records or statements to conceal, avoid, or decrease obligations to pay or transmit money or property to the Colorado State Government, in violation of Colo. Rev. Stat § 25.5-4-305(f).

313.    The Colorado State Government, unaware of the falsity of the records, statements

and claims made, used, presented or caused to be made, used or presented by Defendant, has

paid and continues to pay claims that would not be paid but for the Defendant's illegal and

hidden marketing and kickback scheme.

314.    As a result of Defendant's conduct, the State of Colorado has been damaged, and

continues to be damaged, in an amount to be determined at trial.

315.    The State of Colorado is entitled to the maximum penalty of $10,000 for each and

every false or fraudulent claim, record or statement made, used, presented or caused to be made,

used or presented by Defendant.

<u>**TWELFTH CAUSE OF ACTION**</u>
**Connecticut False Claims Act**
**Conn. Gen. Stat. §§ 17b-301b(a)(1), (2), (3) and (7)**

316.    Relator repeats and incorporates by reference the allegations contained in the

foregoing paragraphs of this Complaint as if fully set forth herein.

317.    This is a claim for treble damages and penalties under the CT FCA.

318.    Through the acts more particularly set forth in the foregoing paragraphs,

Defendant has knowingly presented or caused to be presented false or fraudulent claims to the

Connecticut State Government for payment or approval, in violation of Conn. Gen. Stat. § 17b-

301b(a)(1).

319.    Through the acts more particularly set forth in the foregoing paragraphs,

Defendant has knowingly made, used, or caused to be made or used false records and statements,

and omitted material facts, to induce the Connecticut State Government to approve and pay false

and fraudulent claims, in violation of Conn. Gen. Stat. § 17b-301b(a)(2).

320.    Through the acts more particularly set forth in the foregoing paragraphs,

Defendant has conspired to defraud the Connecticut State Government by inducing it to approve

and pay false and fraudulent claims, in violation of Conn. Gen. Stat. § 17b-301b(a)(3).

321.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used or caused to be made or used false records or statements to conceal, avoid, or decrease obligations to pay or transmit money or property to the Connecticut State Government, in violation of Conn. Gen. Stat. § 17b-301b(a)(7).

322.    The Connecticut State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, has paid and continues to pay claims that would not be paid but for the Defendant's illegal and hidden marketing and kickback scheme.

323.    As a result of Defendant's conduct, the State of Connecticut has been damaged, and continues to be damaged, in an amount to be determined at trial.

324.    The State of Connecticut is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

## THIRTEENTH CAUSE OF ACTION
### Delaware False Claims And Reporting Act
### Del. Code Ann tit. 6, §§ 1201(a)(1), (2), (3) and (7)

325.    Relator repeats and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

326.    This is a claim for treble damages and penalties under the DE FCA.

327.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly presented or caused to be presented false or fraudulent claims to the Delaware State Government for payment or approval, in violation of Del. Code Ann. tit. 6, § 1201(a)(1).

328.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Delaware State Government to approve and pay false and fraudulent claims, in violation of Del. Code Ann. tit. 6, § 1201(a)(2).

329.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has conspired to defraud the Delaware State Government by inducing it to approve and pay false and fraudulent claims, in violation of Del. Code Ann. tit. 6, § 1201(a)(3).

330.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used or caused to be made or used false records or statements to conceal, avoid, or decrease obligations to pay or transmit money or property to the Delaware State Government, in violation of Del. Code Ann. tit. 6, § 1201(a)(7).

331.    The Delaware State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendant, has paid and continues to pay claims that would not be paid but for the Defendant's illegal and hidden marketing and kickback scheme.

332.    As a result of Defendant's conduct, the State of Delaware has been damaged, and continues to be damaged, in an amount to be determined at trial.

333.    The State of Delaware is entitled to the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

**FOURTEENTH CAUSE OF ACTION**
**District of Columbia Procurement Reform Act**
**D.C. Stat. § 2-308.14(a)(1), (2), (3) and (7)**

334.    Relator repeats and incorporates by reference the allegations contained in the

foregoing paragraphs of this Complaint as if fully set forth herein.

335.   This is a claim for treble damages and penalties under the DC FCA.

336.   Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly presented or caused to be presented false or fraudulent claims to the District of Columbia for payment or approval, in violation of D.C. Stat. § 2-308.14(a)(1).

337.   Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the District of Columbia to approve and pay false and fraudulent claims, in violation of D.C. Stat. § 2-308.14(a)(2).

338.   Through the acts more particularly set forth in the foregoing paragraphs, Defendant has conspired to defraud the District of Columbia by inducing it to approve and pay false and fraudulent claims, in violation of D.C. Stat. § 2-308.14(a)(3).

339.   Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used or caused to be made or used false records or statements to conceal, avoid, or decrease obligations to pay or transmit money or property to the District of Columbia, in violation of D.C. Stat. § 2-308.14(a)(7).

340.   The District of Columbia Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendant, has paid and continues to pay claims that would not be paid but for the Defendant's illegal and hidden marketing and kickback scheme

341.   As a result of Defendant's conduct, the District of Columbia has been damaged, and continues to be damaged, in an amount to be determined at trial.

342.   The District of Columbia is entitled to the maximum penalty of $10,000 for each

and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

## FIFTEENTH CAUSE OF ACTION
### Florida False Claims Act
### Fla. Stat. Ann. §§ 68.082(2)(a), (b), (c) and (g)

343.    Relator repeats and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

344.    This is a claim for treble damages and penalties under the FL FCA.

345.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly presented or caused to be presented false or fraudulent claims to the Florida State Government for payment or approval, in violation of Fla. Stat. Ann. § 68.082(2)(a).

346.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Florida State Government to approve and pay false and fraudulent claims, in violation of Fla. Stat. Ann. § 68.082(2)(b).

347.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has conspired to defraud the Florida State Government by inducing it to approve and pay false and fraudulent claims, in violation of Fla. Stat. Ann. § 68.082(2)(c).

348.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used or caused to be made or used false records or statements to conceal, avoid, or decrease obligations to pay or transmit money or property to the Florida State Government, in violation of Fla. Stat. Ann. § 68.082(2)(g).

349.    The Florida State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendant, has

paid and continues to pay claims that would not be paid but for the Defendant's illegal and hidden marketing and kickback scheme.

350.    As a result of Defendant's conduct, the State of Florida has been damaged, and continues to be damaged, in an amount to be determined at trial.

351.    The State of Florida is entitled to the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

**SIXTEENTH CAUSE OF ACTION**
**Georgia False Medicaid Claims Act**
**Ga. Code Ann. §§ 49-4-168.1(a)(1), (2), (3) and (7)**

352.    Relator repeats and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

353.    This is a claim for treble damages and penalties under the GA MFCA.

354.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly presented or caused to be presented false or fraudulent claims to the Georgia State Government for payment or approval, in violation of Ga. Code Ann. § 49-4-168.1(a)(1).

355.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Georgia State Government to approve and pay false and fraudulent claims, in violation of Ga. Code Ann. § 49-4-168.1(a)(2).

356.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has conspired to defraud the Georgia State Government by inducing it to approve and pay false and fraudulent claims, in violation of Ga. Code Ann. § 49-4-168.1(a)(3).

357.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used or caused to be made or used false records or statements to conceal, avoid, or decrease obligations to pay or transmit money or property to the Georgia State Government, in violation of Ga. Code Ann. § 49-4-168.1(a)(7).

358.    The Georgia State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendant, has paid and continues to pay claims that would not be paid but for the Defendant's illegal and hidden marketing and kickback scheme.

359.    As a result of Defendant's conduct, the State of Georgia has been damaged, and continues to be damaged, in an amount to be determined at trial.

360.    The State of Georgia is entitled to the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

**SEVENTEENTH CAUSE OF ACTION**
**Hawaii False Claims Act**
**Haw. Rev. Stat. §§ 661-21(a)(1), (2), (3) and (7)**

361.    Relator repeats and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

362.    This is a claim for treble damages and penalties under the HI FCA.

363.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly presented or caused to be presented false or fraudulent claims to the Hawaii State Government for payment or approval, in violation of Haw. Rev. Stat. § 661-21(a)(1).

364.    Through the acts more particularly set forth in the foregoing paragraphs,

Defendant has knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Hawaii State Government to approve and pay false and fraudulent claims, in violation of Haw. Rev. Stat. § 661-21(a)(2).

365.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has conspired to defraud the Hawaii State Government by inducing it to approve and pay false and fraudulent claims, in violation of Haw. Rev. Stat. § 661-21(a)(3).

366.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used or caused to be made or used false records or statements to conceal, avoid, or decrease obligations to pay or transmit money or property to the Hawaii State Government, in violation of Haw. Rev. Stat. § 661-21(a)(7).

367.    The Hawaii State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendant, has paid and continues to pay claims that would not be paid but for the Defendant's illegal and hidden marketing and kickback scheme.

368.     As a result of Defendant's conduct, the State of Hawaii has been damaged, and continues to be damaged, in an amount to be determined at trial.

369.    The State of Hawaii is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

### EIGHTEENTH CAUSE OF ACTION
**Illinois Whistleblower Reward And Protection Act**
**740 Ill. Comp. Stat. §§ 175/3(a)(1), (2), (3) and (7)**

370.    Relator repeats and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

371.    This is a claim for treble damages and penalties under the IL FCA.

372.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly presented or caused to be presented false or fraudulent claims to the Illinois State Government for payment or approval, in violation of 740 Ill. Comp. Stat. § 175/3(a)(1).

373.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Illinois State Government to approve and pay false and fraudulent claims, in violation of 740 Ill. Comp. Stat. § 175/3(a)(2).

374.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has conspired to defraud the Illinois State Government by inducing it to approve and pay false and fraudulent claims, in violation of 740 Ill. Comp. Stat. § 175/3(a)(3).

375.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used or caused to be made or used false records or statements to conceal, avoid, or decrease obligations to pay or transmit money or property to the Illinois State Government, in violation of 740 Ill. Comp. Stat. § 175/3(a)(7).

376.    The Illinois State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendant, has paid and continues to pay claims that would not be paid but for the Defendant's illegal and hidden marketing and kickback scheme.

377.    As a result of Defendant's conduct, the State of Illinois has been damaged, and continues to be damaged, in an amount to be determined at trial.

378.    The State of Illinois is entitled to the maximum penalty of $11,000 for each and

every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

### NINETEENTH CAUSE OF ACTION
**Indiana False Claims and Whistleblower Protection Act**
**Ind. Code §§ 5-11-5.5-2(b)(1), (2), (6) and (7)**

379.    Relator repeats and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

380.    This is a claim for treble damages and penalties under the IN FCA.

381.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly presented or caused to be presented false or fraudulent claims to the Indiana State Government for payment or approval, in violation of Ind. Code § 5-11-5.5-2(b)(1).

382.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Indiana State Government to approve and pay false and fraudulent claims, in violation of Ind. Code § 5-11-5.5-2(b)(2).

383.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has conspired to defraud the Indiana State Government by inducing it to approve and pay false and fraudulent claims, in violation of Ind. Code § 5-11-5.5-2(b)(7).

384.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used or caused to be made or used false records or statements to conceal, avoid, or decrease obligations to pay or transmit money or property to the Indiana State Government, in violation of Ind. Code § 5-11-5.5-2(b)(6).

385.    The Indiana State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendant, has

paid and continues to pay claims that would not be paid but for the Defendant's illegal and hidden marketing and kickback scheme.

386.    As a result of Defendant's conduct, the State of Indiana has been damaged, and continues to be damaged, in an amount to be determined at trial.

387.    The State of Indiana is entitled to the maximum penalty of at least $5,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

<b><u>TWENTIETH CAUSE OF ACTION</u></b>
<b>Iowa Medicaid False Claims Act</b>
<b>Iowa Code Ann. § 685.2(1)(a), (b), (c) and (g)</b>

388.    Relator repeats and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

389.    This is a claim for treble damages and penalties under the IA MFCA.

390.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly presented or caused to be presented false or fraudulent claims to the Iowa State Government for payment or approval, in violation of Iowa Code Ann. § 685.2(1)(a).

391.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Iowa State Government to approve and pay false and fraudulent claims, in violation of Iowa Code Ann. § 685.2(1)(b).

392.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has conspired to defraud the Iowa State Government by inducing it to approve and pay false and fraudulent claims, in violation of Iowa Code Ann. § 685.2(1)(c).

393.    Through the acts more particularly set forth in the foregoing paragraphs,

Defendant has knowingly made, used or caused to be made or used false records or statements to conceal, avoid, or decrease obligations to pay or transmit money or property to the Iowa State Government, in violation of Iowa Code Ann. § 685.2(1)(g).

394.    The Iowa State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendant, has paid and continues to pay claims that would not be paid but for the Defendant's illegal and hidden marketing and kickback scheme.

395.    As a result of Defendant's conduct, the State of Iowa has been damaged, and continues to be damaged, in an amount to be determined at trial.

396.    The State of Iowa is entitled to the maximum penalty of at least $5,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

### TWENTY-FIRST CAUSE OF ACTION
**Louisiana Medical Assistance Programs Integrity Law**
**La. Rev. Stat. Ann. §§ 438.3(A), (B), (C) and (D)**

397.    Relator repeats and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

398.    This is a claim for treble damages and penalties under the LA MFCA.

399.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly presented or caused to be presented false or fraudulent claims to the Louisiana State Government for payment or approval, in violation of La. Rev. Stat. Ann. § 438.3(A).

400.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used, or caused to be made or used false records and statements,

and omitted material facts, to induce the Louisiana State Government to approve and pay false and fraudulent claims, in violation of La. Rev. Stat. Ann. § 438.3(B).

401.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has conspired to defraud the Louisiana State Government by inducing it to approve and pay false and fraudulent claims, in violation of La. Rev. Stat. Ann. § 438.3(D).

402.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used or caused to be made or used false records or statements to conceal, avoid, or decrease obligations to pay or transmit money or property to the Louisiana State Government, in violation of La. Rev. Stat. Ann. § 438.3(C).

403.    The Louisiana State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendant, has paid and continues to pay claims that would not be paid but for the Defendant's illegal and hidden marketing and kickback scheme.

404.    As a result of Defendant's conduct, the State of Louisiana has been damaged, and continues to be damaged, in an amount to be determined at trial.

405.    The State of Louisiana is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

## TWENTY-SECOND CAUSE OF ACTION
### Maryland False Health Claims Act of 2010
### Md. Code Ann., Health §§ 2-602(A)(1), (2), (3), (7), (8) and (9)

406.    Relator repeats and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

407.    This is a claim for treble damages and penalties under the MD FHCA.

408.     Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly presented or caused to be presented false or fraudulent claims to the Maryland State Government for payment or approval, in violation of Md. Code Ann., Health §§ 2-602(A)(1) and (8).

409.     Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Maryland State Government to approve and pay false and fraudulent claims, in violation of Md. Code Ann., Health § 2-602(A)(2).

410.     Through the acts more particularly set forth in the foregoing paragraphs, Defendant has conspired to defraud the Maryland State Government by inducing it to approve and pay false and fraudulent claims, in violation of Md. Code Ann., Health § 2-602(A)(3).

411.     Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used or caused to be made or used false records or statements material to obligations to pay or transmit money or property to the Maryland State Government, in violation of Md. Code Ann., Health § 2-602(A)(7).

412.     Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly and improperly concealed, avoided or decreased obligations to pay or transmit money or property to the Maryland State Government, in violation of Md. Code Ann., Health § 2-602(A)(8).

413.     The Maryland State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendant, has paid and continues to pay claims that would not be paid but for the Defendant's illegal and hidden marketing and kickback scheme.

414.    As a result of Defendant's conduct, the State of Maryland has been damaged, and continues to be damaged, in an amount to be determined at trial.

415.    The State of Maryland is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

### TWENTY-THIRD CAUSE OF ACTION
**Massachusetts False Claims Act**
**Mass. Gen. Laws ch. 12, §§ 5B(1), (2), (3) and (8)**

416.    Relator repeats and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

417.    This is a claim for treble damages and penalties under the MA FCA.

418.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly presented or caused to be presented false or fraudulent claims to the Massachusetts State Government for payment or approval, in violation of Mass. Gen. Laws ch. 12, § 5B(1).

419.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Massachusetts State Government to approve and pay false and fraudulent claims, in violation of Mass. Gen. Laws ch. 12, § 5B(2).

420.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has conspired to defraud the Massachusetts State Government by inducing it to approve and pay false and fraudulent claims, in violation of Mass. Gen. Laws ch. 12, § 5B(3).

421.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used or caused to be made or used false records or statements to

conceal, avoid, or decrease obligations to pay or transmit money or property to the Massachusetts State Government, in violation of Mass. Gen. Laws ch. 12, § 5B(8).

422.    The Massachusetts Commonwealth Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendant, has paid and continues to pay claims that would not be paid but for the Defendant's illegal and hidden marketing and kickback scheme.

423.    As a result of Defendant's conduct, the Commonwealth of Massachusetts has been damaged, and continues to be damaged, in an amount to be determined at trial.

424.    The Commonwealth of Massachusetts is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

### TWENTY-FOURTH CAUSE OF ACTION
**Michigan Medicaid False Claims Act**
**Mich. Comp. Laws §§ 400.606-07**

425.    Relator repeats and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

426.    This is a claim for damages and penalties under the MI FCA.

427.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has conspired to defraud the Michigan State Government by inducing it to approve and pay false and fraudulent claims, in violation of Mich. Comp. Laws § 400.606.

428.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made or presented, or caused to be made or presented, false or fraudulent claims to the Michigan State Government for payment or approval, in violation of Mich. Comp. Laws § 400.607.

429.     The Michigan State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendant, has paid and continues to pay claims that would not be paid but for the Defendant's illegal and hidden marketing and kickback scheme.

430.     As a result of Defendant's conduct, the State of Michigan has been damaged, and continues to be damaged, in an amount to be determined at trial.

431.     The State of Michigan is entitled to the maximum penalty of $50,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

**TWENTY-FIFTH CAUSE OF ACTION**
**Minnesota False Claims Act**
**Minn. Stat. §§ 15C.02(a)(1), (2), (3) and (7)**

432.     Relator repeats and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

433.     This is a claim for treble damages and penalties under the MN FCA.

434.     Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly presented or caused to be presented false or fraudulent claims to the Minnesota State Government for payment or approval, in violation of Minn. Stat. § 15C.02(a)(1).

435.     Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Minnesota State Government to approve and pay false and fraudulent claims, in violation of Minn. Stat. § 15C.02(a)(2).

436.     Through the acts more particularly set forth in the foregoing paragraphs, Defendant has conspired to defraud the Minnesota State Government by inducing it to approve

and pay false and fraudulent claims, in violation of Minn. Stat. § 15C.02(a)(3).

437.     Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used or caused to be made or used false records or statements material to obligations to pay or transmit money or property to the Minnesota State Government, in violation of Minn. Stat. § 15C.02(a)(7).

438.     The Minnesota State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendant, has paid and continues to pay claims that would not be paid but for the Defendant's illegal and hidden marketing and kickback scheme.

439.     As a result of Defendant's conduct, the State of Minnesota has been damaged, and continues to be damaged, in an amount to be determined at trial.

440.     The State of Minnesota is entitled to the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

**TWENTY-SIXTH CAUSE OF ACTION**
**Montana False Claims Act**
**Mont. Code Ann. §§ 17-8-403(1)(a), (b), (c) and (g)**

441.     Relator repeats and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

442.     This is a claim for treble damages and penalties under the MT FCA.

443.     Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly presented or caused to be presented false or fraudulent claims to the Montana State Government for payment or approval, in violation of Mont. Code Ann. § 17-8-403(1)(a).

444.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Montana State Government to approve and pay false and fraudulent claims, in violation of Mont. Code Ann. § 17-8-403(1)(b).

445.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has conspired to defraud the Montana State Government by inducing it to approve and pay false and fraudulent claims, in violation of Mont. Code Ann. § 17-8-403(1)(c).

446.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used or caused to be made or used false records or statements material to obligations to pay or transmit money or property to the Montana State Government, in violation of Mont. Code Ann. § 17-8-403(1)(g).

447.    The Montana State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendant, has paid and continues to pay claims that would not be paid but for the Defendant's illegal and hidden marketing and kickback scheme.

448.    As a result of Defendant's conduct, the State of Montana has been damaged, and continues to be damaged, in an amount to be determined at trial.

449.    The State of Montana is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

**TWENTY-SEVENTH CAUSE OF ACTION**
**Nevada False Claims Act**
**Nev. Rev. Stat. §§ 357.040(1)(a), (b), (c) and (g)**

450.    Relator repeats and incorporates by reference the allegations contained in the

foregoing paragraphs of this Complaint as if fully set forth herein.

451.     This is a claim for treble damages and penalties under the NV FCA.

452.     Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly presented or caused to be presented false or fraudulent claims to the Nevada State Government for payment or approval, in violation of Nev. Rev. Stat. § 357.040(1)(a).

453.     Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Nevada State Government to approve and pay false and fraudulent claims, in violation of Nev. Rev. Stat. § 357.040(1)(b).

454.     Through the acts more particularly set forth in the foregoing paragraphs, Defendant has conspired to defraud the Nevada State Government by inducing it to approve and pay false and fraudulent claims, in violation of Nev. Rev. Stat. § 357.040(1)(c).

455.     Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used or caused to be made or used false records or statements material to obligations to pay or transmit money or property to the Nevada State Government, in violation of Nev. Rev. Stat. § 357.040(1)(g).

456.     The Nevada State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendant, has paid and continues to pay claims that would not be paid but for the Defendant's illegal and hidden marketing and kickback scheme.

457.     As a result of Defendant's conduct, the State of Nevada has been damaged, and continues to be damaged, in an amount to be determined at trial.

458.    The State of Nevada is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

**TWENTY-EIGHTH CAUSE OF ACTION**
**New Hampshire False Claims Act**
**N.H. Rev. Stat. Ann. §§ 167:61-b(I)(a), (b), (c) and (e)**

459.    Relator repeats and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

460.    This is a claim for treble damages and penalties under the NH FCA.

461.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly presented or caused to be presented false or fraudulent claims to the New Hampshire State Government for payment or approval, in violation of N.H. Rev. Stat. Rev. Stat. Ann. § 167:61-b(I)(a).

462.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the New Hampshire State Government to approve and pay false and fraudulent claims, in violation of N.H. Rev. Stat. Rev. Stat. Ann. § 167:61-b(I)(b).

463.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has conspired to defraud the New Hampshire State Government by inducing it to approve and pay false and fraudulent claims, in violation of N.H. Rev. Stat. Rev. Stat. Ann. § 167:61-b(I)(c).

464.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used or caused to be made or used false records or statements material to obligations to pay or transmit money or property to the New Hampshire State

Government, in violation of N.H. Rev. Stat. Rev. Stat. Ann. § 167:61-b(I)(e).

465.     The New Hampshire State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendant, has paid and continues to pay  claims that would not be paid but for the Defendant's illegal and hidden marketing and kickback scheme.

466.     As a result of Defendant's conduct, the State of New Hampshire has been damaged, and continues to be damaged, in an amount to be determined at trial.

467.     The State of New Hampshire is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

<u>**TWENTY-NINTH CAUSE OF ACTION**</u>
**New Jersey False Claims Act**
**N.J. Stat. Ann. §§ 2A:32C-3(a), (b), (c) and (g)**

468.     Relator repeats and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

469.     This is a claim for treble damages and penalties under the NJ FCA.

470.     Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly presented or caused to be presented false or fraudulent claims to the New Jersey State Government for payment or approval, in violation of N.J. Stat. Ann. § 2A:32C-3(a).

471.     Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the New Jersey State Government to approve and pay false and fraudulent claims, in violation of N.J. Stat. Ann. § 2A:32C-3(b).

472.     Through the acts more particularly set forth in the foregoing paragraphs, Defendant has conspired to defraud the New Jersey State Government by inducing it to approve and pay false and fraudulent claims, in violation of N.J. Stat. Ann. § 2A:32C-3(c).

473.     Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used or caused to be made or used false records or statements material to obligations to pay or transmit money or property to the New Jersey State Government, in violation of N.J. Stat. Ann. § 2A:32C-3(g).

474.     The New Jersey State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendant, has paid and continues to pay claims that would not be paid but for the Defendant's illegal and hidden marketing and kickback scheme.

475.     As a result of Defendant's conduct, the State of New Jersey has been damaged, and continues to be damaged, in an amount to be determined at trial.

476.     The State of New Jersey is entitled to the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

## THIRTIETH CAUSE OF ACTION
### New Mexico Medicaid False Claims Act
### N.M. Stat. Ann. §§ 27-14-4(A), (C), (D), and (E)

477.     Relator repeats and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

478.     This is a claim for treble damages under the NM MFCA.

479.     Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly presented or caused to be presented false or fraudulent claims to the

New Mexico State Government for payment or approval, in violation of N.M. Stat. Ann. § 27-14-4(A).

480.   Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the New Mexico State Government to approve and pay false and fraudulent claims, in violation of N.M. Stat. Ann. § 27-14-4(C).

481.   Through the acts more particularly set forth in the foregoing paragraphs, Defendant has conspired to defraud the New Mexico State Government by inducing it to approve and pay false and fraudulent claims, in violation of N.M. Stat. Ann. § 27-14-4(D).

482.   Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used or caused to be made or used false records or statements material to obligations to pay or transmit money or property to the New Mexico State Government, in violation of N.M. Stat. Ann. § 27-14-4(E).

483.   The New Mexico State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendant, has paid and continues to pay claims that would not be paid but for the Defendant's illegal and hidden marketing and kickback scheme.

484.   As a result of Defendant's conduct, the State of New Mexico has been damaged, and continues to be damaged, in an amount to be determined at trial.

### THIRTY-FIRST CAUSE OF ACTION
**New York False Claims Act**
**N.Y. State Fin. §§ 189(1)(a), (b), (c) and (g)**

485.   Relator repeats and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

486.    This is a claim for treble damages and penalties under the NY FCA.

487.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly presented or caused to be presented false or fraudulent claims to the New York State Government for payment or approval, in violation of N.Y. State Fin. § 189(1)(a).

488.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the New York State Government to approve and pay false and fraudulent claims, in violation of N.Y. State Fin. § 189(1)(b).

489.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has conspired to defraud the New York State Government by inducing it to approve and pay false and fraudulent claims, in violation of N.Y. State Fin. § 189(1)(c).

490.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used or caused to be made or used false records or statements material to obligations to pay or transmit money or property to the New York State Government, in violation of N.Y. State Fin. § 189(1)(g).

491.    The New York State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendant, has paid and continues to pay claims that would not be paid but for the Defendant's illegal and hidden marketing and kickback scheme.

492.    As a result of Defendant's conduct, the State of New York has been damaged, and continues to be damaged, in an amount to be determined at trial.

493.    The State of New York is entitled to the maximum penalty of $12,000 for each

and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

### THIRTY-SECOND CAUSE OF ACTION
**North Carolina False Claims Act**
**N.C. Gen. Stat. §§ 1-607(a)(1), (2), (3) and (7)**

494.     Relator repeats and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

495.     This is a claim for treble damages and penalties under the North Carolina False Claims Act.

496.     Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly presented or caused to be presented false or fraudulent claims to the North Carolina State Government for payment or approval, in violation of N.C. Gen. Stat. § 1-607(a)(1).

497.     Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the North Carolina State Government to approve and pay false and fraudulent claims, in violation of N.C. Gen. Stat. § 1-607(a)(2).

498.     Through the acts more particularly set forth in the foregoing paragraphs, Defendant has conspired to defraud the North Carolina State Government by inducing it to approve and pay false and fraudulent claims, in violation of N.C. Gen. Stat. § 1-607(a)(3).

499.     Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used or caused to be made or used false records or statements material to obligations to pay or transmit money or property to the North Carolina State Government, in violation of N.C. Gen. Stat. § 1-607(a)(7).

500.    The North Carolina State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendant, has paid and continues to pay claims that would not be paid but for the Defendant's illegal and hidden marketing and kickback scheme.

501.    As a result of Defendant's conduct, the State of North Carolina has been damaged, and continues to be damaged, in an amount to be determined at trial.

502.    The State of North Carolina is entitled to the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

**THIRTY-THIRD CAUSE OF ACTION**
**Oklahoma Medicaid False Claims Act**
**Ok. Stat. tit. 63, §§ 5053.1(B)(1), (2), (3) and (7)**

503.    Relator repeats and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

504.    This is a claim for treble damages and penalties under the OK MFCA.

505.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly presented or caused to be presented false or fraudulent claims to the Oklahoma State Government for payment or approval, in violation of Ok. Stat. tit. 63, § 5053.1(B)(1).

506.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Oklahoma State Government to approve and pay false and fraudulent claims, in violation of Ok. Stat. tit. 63, § 5053.1(B)(2).

507.    Through the acts more particularly set forth in the foregoing paragraphs,

Defendant has conspired to defraud the Oklahoma State Government by inducing it to approve and pay false and fraudulent claims, in violation of Ok. Stat. tit. 63, § 5053.1(B)(3).

508.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used or caused to be made or used false records or statements material obligatiosn to pay or transmit money or property to the Oklahoma State Government, in violation of Ok. Stat. tit. 63, § 5053.1(B)(7).

509.    The Oklahoma State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendant, has paid and continues to pay claims that would not be paid but for the Defendant's illegal and hidden marketing and kickback scheme.

510.    As a result of Defendant's conduct, the State of Oklahoma has been damaged, and continues to be damaged, in an amount to be determined at trial.

511.    The State of Oklahoma is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

## THIRTY-FOURTH CAUSE OF ACTION
### Rhode Island False Claims Act
### R.I. Gen. Laws §§ 9-1.1-3(a)(1), (2), (3) and (7)

512.    Relator repeats and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

513.    This is a claim for treble damages and penalties under the RI FCA.

514.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly presented or caused to be presented false or fraudulent claims to the Rhode Island State Government for payment or approval, in violation of R.I. Gen. Laws § 9-1.1-

3(a)(1).

515.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Rhode Island State Government to approve and pay false and fraudulent claims, in violation of R.I. Gen. Laws § 9-1.1-3(a)(2).

516.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has conspired to defraud the Rhode Island State Government by inducing it to approve and pay false and fraudulent claims, in violation of R.I. Gen. Laws § 9-1.1-3(a)(3).

517.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used or caused to be made or used false records or statements material to obligations to pay or transmit money or property to the Rhode Island State Government, in violation of R.I. Gen. Laws § 9-1.1-3(a)(7).

518.    The Rhode Island State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendant, has paid and continues to pay claims that would not be paid but for the Defendant's illegal and hidden marketing and kickback scheme.

519.    As a result of Defendant's conduct, the State of Rhode Island has been damaged, and continues to be damaged, in an amount to be determined at trial.

520.    The State of Rhode Island is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

## THIRTY-FIFTH CAUSE OF ACTION
### Tennessee False Claims Act
### Tenn. Code Ann. §§ 71-5-182(a)(1)(A)-(D)

521.     Relator repeats and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

522.     This is a claim for treble damages and penalties under the TN MFCA.

523.     Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly presented or caused to be presented false or fraudulent claims to the Tennessee State Government for payment or approval, under the Medicaid program, in violation of Tenn. Code Ann. § 71-5-185(a)(1)(A).

524.     Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Tennessee State Government to approve and pay false and fraudulent claims, in violation of Tenn. Code Ann. § 71-5-182(a)(1)(B).

525.     Through the acts more particularly set forth in the foregoing paragraphs, Defendant has conspired to defraud the Tennessee State Government by inducing it to approve and pay false and fraudulent claims, in violation of Tenn. Code Ann. § 71-5-182(a)(1)(C).

526.     Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used or caused to be made or used false records or statements to conceal, avoid, or decrease obligations to pay or transmit money or property to the Tennessee State Government, relative to the Medicaid program, in violation of Tenn. Code Ann. § 71-5-182(a)(1)(D).

527.     The Tennessee State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the

Defendant, has paid and continues to pay claims that would not be paid but for the Defendant's illegal and hidden marketing and kickback scheme.

528.     As a result of Defendant's conduct, the State of Tennessee has been damaged, and continues to be damaged, in an amount to be determined at trial.

529.     The State of Tennessee is entitled to the maximum penalty of $25,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

**THIRTY-SIXTH CAUSE OF ACTION**
**Texas Medicaid Fraud Prevention Law**
**Tex. Hum. Res. Code Ann. §§ 36.002(1), (2), (5) and (9)**

530.     Relator repeats and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

531.     This is a claim for double damages and penalties under the TX MFCA.

532.     Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made or caused to be made false statements of material fact, in order to receive benefits unauthorized under the Texas Medicaid program, in violation of Tex. Hum. Res. Code Ann. § 36.002(1).

533.     Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly concealed or failed to disclose information, in order to receive benefits unauthorized under the Texas Medicaid program, in violation of Tex. Hum. Res. Code Ann. § 36.002(2).

534.     Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly paid unlawful kickbacks and other consideration in violation of Tex. Hum. Res. Code Ann. § 36.002(5).

535.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly conspired to defraud the Texas State Government by inducing it to approve and pay false and fraudulent claims, in violation of Tex. Hum. Res. Code Ann. § 36.002(9).

536.    The Texas State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendant, has paid and continues to pay claims that would not be paid but for the Defendant's illegal and hidden marketing and kickback scheme.

537.    As a result of Defendant's conduct, the State of Texas has been damaged, and continues to be damaged, in an amount to be determined at trial.

538.    The State of Texas is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

### THIRTY-SEVENTH CAUSE OF ACTION
**Virginia Fraud Against Taxpayers Act**
**Va. Code Ann. §§ 8.01-216.3(a)(1), (2), (3) and (7)**

539.    Relator repeats and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

540.    This is a claim for treble damages and penalties under the VA FCA.

541.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly presented or caused to be presented false or fraudulent claims to the Virginia Commonwealth Government for payment or approval, in violation of Va. Code Ann. § 8.01-216.3(a)(1).

542.    Through the acts more particularly set forth in the foregoing paragraphs,

Defendant has knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Virginia Commonwealth Government to approve and pay false and fraudulent claims, in violation of Va. Code Ann. § 8.01-216.3(a)(2).

543.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has conspired to defraud the Virginia Commonwealth Government by inducing it to approve and pay false and fraudulent claims, in violation of Va. Code Ann. § 8.01-216.3(a)(3).

544.    Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used or caused to be made or used false records or statements material to obligations to pay or transmit money or property to the Virginia Commonwealth Government, in violation of Va. Code Ann. § 8.01-216.3(a)(7).

545.    The Virginia Commonwealth Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendant, has paid and continues to pay claims that would not be paid but for the Defendant's illegal and hidden marketing and kickback scheme.

546.    As a result of Defendant's conduct, the Commonwealth of Virginia has been damaged, and continues to be damaged, in an amount to be determined at trial.

547.    The Commonwealth of Virginia is entitled to the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

### THIRTY-EIGHTH CAUSE OF ACTION
**Wisconsin False Claims Act**
**Wis. Stat. §§ 20.931(2)(a), (b), (c) and (g)**

548.    Relator repeats and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

549.   This is a claim for treble damages and penalties under the WI MFCA.

550.   Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly presented or caused to be presented false or fraudulent claims to the Wisconsin State Government for payment or approval, in violation of Wis. Stat. § 20.931(2)(a).

551.   Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Wisconsin State Government to approve and pay false and fraudulent claims, in violation of Wis. Stat. § 20.931(2)(b).

552.   Through the acts more particularly set forth in the foregoing paragraphs, Defendant has conspired to defraud the Wisconsin State Government by inducing it to approve and pay false and fraudulent claims, in violation of Wis. Stat. § 20.931(2)(c).

553.   Through the acts more particularly set forth in the foregoing paragraphs, Defendant has knowingly made, used or caused to be made or used false records or statements material to obligations to pay or transmit money or property to the Wisconsin State Government, in violation of Wis. Stat. § 20.931(2)(g).

554.   The Wisconsin State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendant, has paid and continues to pay claims that would not be paid but for the Defendant's illegal and hidden marketing and kickback scheme.

555.   As a result of Defendant's conduct, the State of Wisconsin has been damaged, and continues to be damaged, in an amount to be determined at trial.

556.   The State of Wisconsin is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be

made, used or presented by the Defendant.

## PRAYER FOR RELIEF

**WHEREFORE,** Relator, on behalf of the United States, demands judgment against

Defendant, ordering that:

a. Defendant pay an amount equal to three times the amount of damages that the United States has sustained because of Defendant's actions which Relator currently estimates to be in the millions of dollars, plus a civil penalty of not less than $5,500 and not more than $11,000, or such other penalty as the law may permit and/or require, for each violation of 31 U.S.C. § 3729 *et seq*.;

b. Relator be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730 and/or any other applicable provision of law;

c. Relator be awarded all costs and expenses of this action, including attorneys' fees as provided by 31 U.S.C. § 3730 and/or any other applicable provision of law; and

d. Relator be awarded such other and further relief as this Court may deem just and proper.

**WHEREFORE,** Relator, on behalf of the State of California, demands judgment against

Defendant, ordering that:

a. Defendant pay an amount equal to three times the amount of damages that the State of California has sustained because of Defendant's actions, plus a civil penalty of not less than $5,000 and not more than $10,000, or such other penalty as the law may permit and/or require, for each violation of the CA FCA;

b. Relator be awarded the maximum amount allowed pursuant to the CA FCA and/or any other applicable provision of law;

c. Relator be awarded all costs and expenses of this action, including attorneys' fees as provided by the CA FCA and/or any other applicable provision of law; and

d. Relator be awarded such other and further relief as this Court may deem just and proper.

**WHEREFORE,** Relator, on behalf of the State of Colorado, demands judgment against Defendant, ordering that:

    a.  Defendant pay an amount equal to three times the amount of damages that the State of Colorado has sustained because of Defendant's actions, plus a civil penalty of not less than $5,000 and not more than $10,000, or such other penalty as the law may permit and/or require, for each violation of the CO MFCA;

    b.  Relator be awarded the maximum amount allowed pursuant to the CO MFCA and/or any other applicable provision of law;

    c.  Relator be awarded all costs and expenses of this action, including attorneys' fees as provided by the CO MFCA and/or any other applicable provision of law; and

    d.  Relator be awarded such other and further relief as this Court may deem just and proper.

**WHEREFORE,** Relator, on behalf of the State of Connecticut, demands judgment against Defendant, ordering that:

    a.  Defendant pay an amount equal to three times the amount of damages that the State of Connecticut has sustained because of Defendant's actions, plus a civil penalty of not less than $5,500 and not more than $11,000, or such other penalty as the law may permit and/or require, for each violation of the CT FCA;

    b.  Relator be awarded the maximum amount allowed pursuant to the CT FCA and/or any other applicable provision of law;

    c.  Relator be awarded all costs and expenses of this action, including attorneys' fees as provided by the CT FCA and/or any other applicable provision of law; and

    d.  Relator be awarded such other and further relief as this Court may deem just and proper.

**WHEREFORE,** Relator, on behalf of the State of Delaware, demands judgment against Defendant, ordering that:

    a.  Defendant pay an amount equal to three times the amount of damages that the State of Delaware has sustained because of Defendant's actions, plus a civil penalty of not less than $5,500 and not more than $11,000, or such other penalty as the law may permit and/or require, for each violation of the DE FCA;

     b.   Relator be awarded the maximum amount allowed pursuant to the DE FCA and/or any other applicable provision of law;

     c.   Relator be awarded all costs and expenses of this action, including attorneys' fees as provided by the DE FCA and/or any other applicable provision of law; and

     d.   Relator be awarded such other and further relief as this Court may deem just and proper.

**WHEREFORE,** Relator, on behalf of the District of Columbia, demands judgment against Defendant, ordering that:

     a.   Defendant pay an amount equal to three times the amount of damages that the District of Columbia has sustained because of Defendant's actions, plus a civil penalty of not less than $5,000 and not more than $10,000, or such other penalty as the law may permit and/or require, for each violation of the DC FCA;

     b.   Relator be awarded the maximum amount allowed pursuant to the DC FCA and/or any other applicable provision of law;

     c.   Relator be awarded all costs and expenses of this action, including attorneys' fees as provided by the DC FCA and/or any other applicable provision of law; and

     d.   Relator be awarded such other and further relief as this Court may deem just and proper.

**WHEREFORE,** Relator, on behalf of the State of Florida, demands judgment against Defendant, ordering that:

     a.   Defendant pay an amount equal to three times the amount of damages that the State of Florida has sustained because of Defendant's actions, plus a civil penalty of not less than $5,500 and not more than $11,000, or such other penalty as the law may permit and/or require, for each violation of the FL FCA;

     b.   Relator be awarded the maximum amount allowed pursuant to the FL FCA and/or any other applicable provision of law;

     c.   Relator be awarded all costs and expenses of this action, including attorneys' fees as provided by the FL FCA and/or any other applicable provision of law; and

     d.   Relator be awarded such other and further relief as this Court may deem just and proper.

**WHEREFORE,** Relator, on behalf of the State of Georgia, demands judgment against

Defendant, ordering that:

      a.  Defendant pay an amount equal to three times the amount of damages that the State of Georgia has sustained because of Defendant's actions, plus a civil penalty of not less than $5,500 and not more than $11,000, or such other penalty as the law may permit and/or require, for each violation of the GA FMCA;

      b.  Relator be awarded the maximum amount allowed pursuant to the GA FMCA and/or any other applicable provision of law;

      c.  Relator be awarded all costs and expenses of this action, including attorneys' fees as provided by GA FMCA and/or any other applicable provision of law; and

      d.  Relator be awarded such other and further relief as this Court may deem just and proper.

**WHEREFORE,** Relator, on behalf of the State of Hawaii, demands judgment against

Defendant, ordering that:

      a.  Defendant pay an amount equal to three times the amount of damages that the State of Hawaii has sustained because of Defendant's actions, plus a civil penalty of not less than $5,000 and not more than $10,000, or such other penalty as the law may permit and/or require, for each violation of the HI FCA;

      b.  Relator be awarded the maximum amount allowed pursuant to the HI FCA and/or any other applicable provision of law;

      c.  Relator be awarded all costs and expenses of this action, including attorneys' fees as provided by HI FCA and/or any other applicable provision of law; and

      d.  Relator be awarded such other and further relief as this Court may deem just and proper.

**WHEREFORE,** Relator, on behalf of the State of Illinois, demands judgment against

Defendant, ordering that:

      a.  Defendant pay an amount equal to three times the amount of damages that the State of Illinois has sustained because of Defendant's actions, plus a civil penalty of not less than $5,500 and not more than $11,000, or such other penalty as the law may permit and/or require, for each violation of IL FCA;

    b.   Relator be awarded the maximum amount allowed pursuant to IL FCA and/or any other applicable provision of law;

    c.   Relator be awarded all costs and expenses of this action, including attorneys' fees as provided by IL FCA and/or any other applicable provision of law; and

    d.   Relator be awarded such other and further relief as this Court may deem just and proper.

**WHEREFORE,** Relator, on behalf of the State of Indiana, demands judgment against Defendant, ordering that:

    a.   Defendant pay an amount equal to three times the amount of damages that the State of Indiana has sustained because of Defendant's actions, plus a civil penalty of at least $5,000, or such other penalty as the law may permit and/or require, for each violation of the IN FCA;

    b.   Relator be awarded the maximum amount allowed pursuant to the IN FCA and/or any other applicable provision of law;

    c.   Relator be awarded all costs and expenses of this action, including attorneys' fees as provided by IN FCA and/or any other applicable provision of law; and

    d.   Relator be awarded such other and further relief as this Court may deem just and proper.

**WHEREFORE,** Relator, on behalf of the State of Iowa, demands judgment against Defendant, ordering that:

    a.   Defendant pay an amount equal to three times the amount of damages that the State of Iowa has sustained because of Defendant's actions, plus a civil penalty of not less than $5,500 and not more than $11,000, or such other penalty as the law may permit and/or require, for each violation of the IA MFCA;

    b.   Relator be awarded the maximum amount allowed pursuant to the IA MFCA and/or any other applicable provision of law;

    c.   Relator be awarded all costs and expenses of this action, including attorneys' fees as provided by the IA MFCA and/or any other applicable provision of law; and

    d.   Relator be awarded such other and further relief as this Court may deem just and proper.

**WHEREFORE,** Relator, on behalf of the State of Louisiana, demands judgment against

Defendant, ordering that:

    a.  Defendant pay an amount equal to three times the amount of damages that the State of Louisiana has sustained because of Defendant's actions, plus a civil penalty of not less than $5,500 and not more than $11,000, or such other penalty as the law may permit and/or require, for each violation of the LA MFCA;

    b.  Relator be awarded the maximum amount allowed pursuant to the LA MFCA and/or any other applicable provision of law;

    c.  Relator be awarded all costs and expenses of this action, including attorneys' fees as provided by the LA MFCA and/or any other applicable provision of law; and

    d.  Relator be awarded such other and further relief as this Court may deem just and proper.

**WHEREFORE,** Relator, on behalf of the State of Maryland, demands judgment against

Defendant, ordering that:

    a.  Defendant pay an amount equal to three times the amount of damages that the State of Maryland has sustained because of Defendant's actions, plus a civil penalty not to exceed $10,000, or such other penalty as the law may permit and/or require, for each violation of the MD FHCA;

    b.  Relator be awarded the maximum amount allowed pursuant to the MD FHCA and/or any other applicable provision of law;

    c.  Relator be awarded all costs and expenses of this action, including attorneys' fees as provided by the MD FHCA and/or any other applicable provision of law; and

    d.  Relator be awarded such other and further relief as this Court may deem just and proper.

**WHEREFORE,** Relator, on behalf of the Commonwealth of Massachusetts, demands

judgment against Defendant, ordering that:

    a.  Defendant pay an amount equal to three times the amount of damages that the Commonwealth of Massachusetts has sustained because of Defendant's actions, plus a civil penalty of not less than $5,000 and not more than $10,000, or such other penalty as the law may permit and/or require, for each violation of the MA FCA;

    b.  Relator be awarded the maximum amount allowed pursuant to the MA FCA and/or any other applicable provision of law;

    c.  Relator be awarded all costs and expenses of this action, including attorneys' fees as provided by the MA FCA and/or any other applicable provision of law; and

    d.  Relator be awarded such other and further relief as this Court may deem just and proper.

**WHEREFORE,** Relator, on behalf of the State of Michigan, demands judgment against Defendant, ordering that:

    a.  Defendant pay any and all damages that the State of Mighigan has sustained because of Defendant's actions, plus a fine of up to $50,000, or such other penalty as the law may permit and/or require, for each violation of MI MFCA;

    b.  Relator be awarded the maximum amount allowed pursuant to the MI MFCA and/or any other applicable provision of law;

    c.  Relator be awarded all costs and expenses of this action, including attorneys' fees as provided by the MI MFCA and/or any other applicable provision of law; and

    d.  Relator be awarded such other and further relief as this Court may deem just and proper.

**WHEREFORE,** Relator, on behalf of the State of Minnesota, demands judgment against Defendant, ordering that:

    a.  Defendant pay an amount equal to three times the amount of damages that the State of Minnesota has sustained because of Defendant's actions, plus a civil penalty of not less than $5,500 and not more than $11,000, or such other penalty as the law may permit and/or require, for each violation of MN FCA;

    b.  Relator be awarded the maximum amount allowed pursuant to the MN FCA and/or any other applicable provision of law;

    c.  Relator be awarded all costs and expenses of this action, including attorneys' fees as provided by the MN FCA and/or any other applicable provision of law; and

    d.  Relator be awarded such other and further relief as this Court may deem just and proper.

**WHEREFORE,** Relator, on behalf of the State of Montana, demands judgment against

Defendant, ordering that:

  a. Defendant pay an amount equal to three times the amount of damages that the State of Montana has sustained because of Defendant's actions, plus a civil penalty of up to $10,000, or such other penalty as the law may permit and/or require, for each violation of MT FCA;

  b. Relator be awarded the maximum amount allowed pursuant to the MT FCA and/or any other applicable provision of law;

  c. Relator be awarded all costs and expenses of this action, including attorneys' fees as provided by the MT FCA and/or any other applicable provision of law; and

  d. Relator be awarded such other and further relief as this Court may deem just and proper.

**WHEREFORE,** Relator, on behalf of the State of Nevada, demands judgment against

Defendant, ordering that:

  a. Defendant pay an amount equal to three times the amount of damages that the State of Nevada has sustained because of Defendant's actions, plus a civil penalty of not less than $5,00 and not more than $10,000, or such other penalty as the law may permit and/or require, for each violation of NV FCA;

  b. Relator be awarded the maximum amount allowed pursuant to the NV FCA and/or any other applicable provision of law;

  c. Relator be awarded all costs and expenses of this action, including attorneys' fees as provided by the NV FCA and/or any other applicable provision of law; and

  d. Relator be awarded such other and further relief as this Court may deem just and proper.

**WHEREFORE,** Relator, on behalf of the State of New Hampshire, demands judgment

against Defendant, ordering that:

  a. Defendant pay an amount equal to three times the amount of damages that the State of New Hampshire has sustained because of Defendant's actions, plus a civil penalty of not less than $5,000 and not more than $10,000, or such other penalty as the law may permit and/or require, for each violation of the NH FCA;

b.  Relator be awarded the maximum amount allowed pursuant to the NH FCA and/or any other applicable provision of law;

c.  Relator be awarded all costs and expenses of this action, including attorneys' fees as provided by the NH FCA and/or any other applicable provision of law; and

d.  Relator be awarded such other and further relief as this Court may deem just and proper.

**WHEREFORE,** Relator, on behalf of the State of New Jersey, demands judgment against Defendant, ordering that:

a.  Defendant pay an amount equal to three times the amount of damages that the State of New Jersey has sustained because of Defendant's actions, plus a civil penalty of not less than $5,500 and not more than $11,000, or such other penalty as the law may permit and/or require, for each violation of the NJ FCA;

b.  Relator be awarded the maximum amount allowed pursuant to the NJ FCA and/or any other applicable provision of law;

c.  Relator be awarded all costs and expenses of this action, including attorneys' fees as provided by the NJ FCA and/or any other applicable provision of law; and

d.  Relator be awarded such other and further relief as this Court may deem just and proper.

**WHEREFORE,** Relator, on behalf of the State of New Mexico, demands judgment against Defendant, ordering that:

a.  Defendant pay an amount equal to three times the amount of damages that the State of New Mexico has sustained because of Defendant's actions or such other penalty as the law may permit and/or require, for each violation of the NM MFCA;

b.  Relator be awarded the maximum amount allowed pursuant to the NM MFCA and/or any other applicable provision of law;

c.  Relator be awarded all costs and expenses of this action, including attorneys' fees as provided by the NM MFCA and/or any other applicable provision of law; and

d.  Relator be awarded such other and further relief as this Court may deem just and proper.

**WHEREFORE,** Relator, on behalf of the State of New York, demands judgment against Defendant, ordering that:

    a.   Defendant pay an amount equal to three times the amount of damages that the State of New York has sustained because of Defendant's actions, plus a civil penalty of not less than $6,000 and not more than $12,000, or such other penalty as the law may permit and/or require, for each violation of the NY FCA;

    b.   Relator be awarded the maximum amount allowed pursuant to the NY FCA and/or any other applicable provision of law;

    c.   Relator be awarded all costs and expenses of this action, including attorneys' fees as provided by the NY FCA and/or any other applicable provision of law; and

    d.   Relator be awarded such other and further relief as this Court may deem just and proper.

**WHEREFORE,** Relator, on behalf of the State of North Carolina, demands judgment against Defendant, ordering that:

    a.   Defendant pay an amount equal to three times the amount of damages that the State of North Carolina has sustained because of Defendant's actions, plus a civil penalty of not less than $5,500 and not more than $11,000, or such other penalty as the law may permit and/or require, for each violation of the NC FCA;

    b.   Relator be awarded the maximum amount allowed pursuant to the NC FCA and/or any other applicable provision of law;

    c.   Relator be awarded all costs and expenses of this action, including attorneys' fees as provided by the NC FCA and/or any other applicable provision of law; and

    d.   Relator be awarded such other and further relief as this Court may deem just and proper.

**WHEREFORE,** Relator, on behalf of the State of Oklahoma, demands judgment against Defendant, ordering that:

    a.   Defendant pay an amount equal to three times the amount of damages that the State of Oklahoma has sustained because of Defendant's actions, plus a civil penalty of not less than $5,000 and not more than $10,000, or such other penalty as the law may permit and/or require, for each violation of the OK MFCA;

      b.   Relator be awarded the maximum amount allowed pursuant to the OK MFCA and/or any other applicable provision of law;

      c.   Relator be awarded all costs and expenses of this action, including attorneys' fees as provided by the OK MFCA and/or any other applicable provision of law; and

      d.   Relator be awarded such other and further relief as this Court may deem just and proper.

**WHEREFORE,** Relator, on behalf of the State of Rhode Island, demands judgment against Defendant, ordering that:

      a.   Defendant pay an amount equal to three times the amount of damages that the State of Rhode Island has sustained because of Defendant's actions, plus a civil penalty of not less than $5,000 and not more than $10,000, or such other penalty as the law may permit and/or require, for each violation of the RI FCA;

      b.   Relator be awarded the maximum amount allowed pursuant to the RI FCA and/or any other applicable provision of law;

      c.   Relator be awarded all costs and expenses of this action, including attorneys' fees as provided by the RI FCA and/or any other applicable provision of law; and

      d.   Relator be awarded such other and further relief as this Court may deem just and proper.

**WHEREFORE,** Relator, on behalf of the State of Tennessee, demands judgment against Defendant, ordering that:

      a.   Defendant pay an amount equal to three times the amount of damages that the State of Tennessee has sustained because of Defendant's actions, plus a civil penalty of not less than $5,000 and not more than $25,000, or such other penalty as the law may permit and/or require, for each violation of the TN MFCA;

      b.   Relator be awarded the maximum amount allowed pursuant to the TN MFCA and/or any other applicable provision of law;

      c.   Relator be awarded all costs and expenses of this action, including attorneys' fees as provided by the TN MFCA and/or any other applicable provision of law; and

      d.   Relator be awarded such other and further relief as this Court may deem just and proper.

**WHEREFORE,** Relator, on behalf of the State of Texas, demands judgment against Defendant, ordering that:

    a.  Defendant pay an amount equal to three times the amount of damages that the State of Texas has sustained because of Defendant's actions, plus a civil penalty of not less than $5,000 and not more than $10,000, or such other penalty as the law may permit and/or require, for each violation of the TX MFCA;

    b.  Relator be awarded the maximum amount allowed pursuant to the TX MFCA and/or any other applicable provision of law;

    c.  Relator be awarded all costs and expenses of this action, including attorneys' fees as provided by the TX MFCA and/or any other applicable provision of law; and

    d.  Relator be awarded such other and further relief as this Court may deem just and proper.

**WHEREFORE,** Relator, on behalf of the Commonwealth of Virginia, demands judgment against Defendant, ordering that:

    a.  Defendant pay an amount equal to three times the amount of damages that the Commonwealth of Virginia has sustained because of Defendant's actions, plus a civil penalty of not less than $5,500 and not more than $11,000, or such other penalty as the law may permit and/or require, for each violation of the VA FCA;

    b.  Relator be awarded the maximum amount allowed pursuant to the VA FCA and/or any other applicable provision of law;

    c.  Relator be awarded all costs and expenses of this action, including attorneys' fees as provided by the VA FCA and/or any other applicable provision of law; and

    d.  Relator be awarded such other and further relief as this Court may deem just and proper.

**WHEREFORE,** Relator, on behalf of the State of Wisconsin, demands judgment against Defendant, ordering that:

    a.  Defendant pay an amount equal to three times the amount of damages that the State of Wisconsin has sustained because of Defendant's actions, plus a civil penalty of not less than $5,000 and not more than $10,000, or such other penalty as the law may permit and/or require, for each violation of the WI MFCA;

b. Relator be awarded the maximum amount allowed pursuant to the WI MFCA and/or any other applicable provision of law;

c. Relator be awarded all costs and expenses of this action, including attorneys' fees as provided by the WI MFCA and/or any other applicable provision of law; and

d. Relator be awarded such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Relator hereby demands a trial by jury as to all issues.

Dated: New York, New York  
April 12, 2012

**SEIGER GFELLER LAURIE LLP**

By: _____

William L. Hurlock  
Chester R. Ostrowski

330 Madison Avenue, Sixth Floor  
New York, New York 10017  
Tel: (212) 653-8861  
Fax: (646) 495-5006  
whurlock@sgllawgroup.com  
costrowski@sgllawgroup.com

103